County of Hall, State of Nebraska, a body politic
and corporate, ex rel. Patricia J. Wisely,
appellant, v. Ronald Leo McDermott, appellee.

284 N. W. 2d 287

Filed October 9, 1979.  No. 42430.

Sam Grimminger, Hall County Attorney, and John Story, for appellant.

O. Wm. VonSeggern of Cunningham, Blackburn, VonSeggern, Livingston & Francis, for appellee.

Heard before Krivosha, C. J., Boslaugh, McCown, Clinton, Brodkey, White, and Hastings, JJ.

Krivosha, C. J.

The County of Hall, Nebraska, acting for and on behalf of Patricia J. Wisely (Hall County), appeals from an order of the District Court for Hall County, Nebraska, which granted to the appellee, Ronald Leo McDermott (McDermott), a new trial. Hall County maintains that the trial court abused its discretion in so granting the motion for new trial. We have examined the record in this matter and find

that the trial court did not abuse its discretion in granting McDermott's motion for new trial, and affirm the judgment of the trial court.

This action had its inception in a "Complaint and Petition" filed by Hall County in the District Court for Hall County, Nebraska, seeking to have McDermott determined to be the father of a child born to Patricia J. Wisely. The complaint alleges that Hall County may be required to support the minor child and was in fact supplying child support through its division of welfare at the time the complaint was filed. Thereafter McDermott, through his then retained counsel, filed a demurrer which was overruled by the trial court. On August 31, 1978, counsel for McDermott filed an application with the court for authority to withdraw as counsel. The files indicate that a copy of the application was served on John Story, attorney for Hall County. The record, however, is silent as to any notice of the motion to withdraw being served upon McDermott. Thereafter, on September 12, 1978, the court entered an order permitting McDermott's then counsel to withdraw, at the same time setting the case for trial on October 10, 1978, at 1:30 p.m. The record fails to disclose that McDermott was notified of his counsel's withdrawal, or that any other counsel had been retained by McDermott and would have been prepared to go to trial on October 10, 1978.

The record does disclose, however, that on September 12, 1978, counsel for Hall County mailed a notice to McDermott advising him that trial in the matter was set for *October 23,* 1978, at 1:30 p.m. The certificate indicates that the notice was sent by regular mail and was neither certified nor registered. Thereafter on September 19, 1978, counsel for appellant, recognizing that the date for trial set out in the notice sent on September 12, 1978, was in error, sent a second notice to McDermott advising him that trial would be on October 10, 1978, rather

than October 23, 1978. Again, the certificate filed by Mr. Story indicates that the notice was sent by regular mail and not by certified or registered mail.

On October 10, 1978, at the hour of 1:30 p.m., being the time set for trial, the record discloses that McDermott appeared in court without counsel. The record further indicates that McDermott had earlier in the day appeared before the trial court and requested a continuance for the reason that he was without counsel.

The trial court admonished McDermott for appearing without counsel, pointing out that the court had permitted his former attorney to withdraw on September 12, 1978. Specifically, the trial court said: "I permitted your attorney to withdraw on the 12th of September — which should have been sufficient time for you to obtain an attorney — and I set this matter for trial at that time." All of that, of course, may have been true if it had been shown that McDermott was given notice of those facts on or shortly after September 12, 1978. The record, however, clearly discloses that he was never made aware of his counsel's application to withdraw nor at the time was he advised of the fact that the trial court had sustained the motion to withdraw and that he was then without counsel.

The record is somewhat in conflict with regard to when in fact McDermott became aware that he was without counsel. When McDermott appeared before the trial court on October 10, 1978, he stated that he had received "the deal saying that Mr. Huston had resigned * * * just last week, Tuesday or Wednesday." The record is likewise unclear as to what the "deal saying that Mr. Huston had resigned" in fact was. There is nothing in the record to indicate that a notice of any kind concerning counsel's withdrawal was sent to McDermott. In McDermott's affidavit seeking a new trial, he alleged that he did not become aware of the fact that he was without counsel

until October 9, 1978, the day before trial. Apparently the trial court was concerned by this conflict when granting the motion for new trial.

Hall County argues that the motion for new trial should not have been sustained, citing Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772, wherein we said, in part: "Where a party has sustained the burden and expense of a trial and has succeeded in securing the judgment of a jury on the facts in issue, he has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured." With that general principle we do not disagree. However, in Johnson v. Enfield, 192 Neb. 191, 219 N. W. 2d 451, we said: "We have consistently and recently held that the standard of judicial review of a trial court's order granting a new trial is whether or not the trial court abused its discretion. [Citations omitted.] By its terms this discretion is necessarily broader than a narrowly isolated and rigid examination of the merits of each alleged error in the record. A combination of errors, for example, each of which in itself might not be grounds for granting a new trial, may result in a finding by the trial judge that justice will be served by retrying the issues in the case. We have held that this court will not ordinarily disturb a trial court's order granting a new trial, and not at all unless it clearly appears that no tenable grounds existed therefor." See, also, Lechliter v. State, 185 Neb. 527, 176 N. W. 2d 917.

With those general principles in mind, a brief examination of the record discloses that the trial court acted properly in granting to McDermott a new trial.

To begin with, an action to establish paternity is statutory in nature, and the authority for such action must be found in the statute and must be in accordance with the provisions thereof. Paltani v. Creel, 169 Neb. 591, 100 N. W. 2d 736. This action appears

to have been brought pursuant to the provisions of section 13-111, R. R. S. 1943, which provides: "A civil proceeding to establish the paternity of a child may be instituted in any district court of the district where the child is domiciled or found, *by the mother of such child,* either during pregnancy or within four years after its birth, *or by the guardian or next friend of such child."* (Emphasis supplied.) The record in this case is unclear as to the County's standing in this matter.

In addition, the record further discloses that the trial court volunteered to aid McDermott. Prior to proceeding to trial the court said: "All right, if it comes to a point that it appears necessary that he [McDermott] have an attorney, we'll see what we can do at that time. * * *" It is reasonable to presume that McDermott believed that if a point was reached where an attorney was necessary, the court would stop the proceedings and provide him with one. An examination of the statutes, however, discloses that that point arrived even before the first witness testified.

Under the provisions of section 13-112, R. R. S. 1943, the method of trial for establishing paternity of a child is the same as in other civil proceedings "except that the trial shall be by the court without a jury *unless a jury be requested by the alleged father."* (Emphasis supplied.) The right to a trial by jury for the determination of paternity is obviously an important one. Unfortunately, however, McDermott was never advised of the fact that he was entitled to a jury. The presence of counsel might have solved that problem. McDermott, however, was relying on the trial court to help him. The importance of a jury in this case was amply pointed out by the statement made by the trial court when ruling on the motion for new trial. The court said: "So, we are just supposed to take Mr. McDermott's word on this. Maybe that's part of the problem here.

I know him too well. You can put this in the record, too, but he's appeared before me on criminal matters, violation of probation, and everything else." It would appear, therefore, that in a case in which the credibility and truthfulness of the witnesses were of extreme importance, a trial to a jury was likewise of importance to McDermott.

To be sure, the fact that one elects not to obtain counsel and appears pro se should not in itself be sufficient to justify the endless continuances of trial or the granting of a new trial. Orderly process must be obtained and litigation must proceed and at some point come to an end. Nevertheless, the record in this case indicates certain precautions could easily have been taken prior to trial to assure that the absence of counsel would not be prejudicial to McDermott. The trial court could have required that notice of original counsel's application to withdraw be served upon McDermott in order to give him an opportunity to appear and object to the motion. Certainly he had as much interest in the matter as Mr. Story, who was served. Likewise, the trial court could have required original counsel for McDermott to serve notice on him that counsel had been authorized to withdraw and to make showing to the trial court that such notice had been served upon McDermott. That procedure would have done much to eliminate the difficulty which ultimately arose on the afternoon of trial. Likewise, the record discloses the introduction of much immaterial and irrelevant evidence which the presence of counsel could have prevented. None of the County's witnesses were subjected to cross-examination even though the only evidence of paternity was the statement of the mother and the testimony of others who said they saw McDermott with the mother during the fall of 1976. Obviously, in examining the matter in retrospect, the trial court concluded that some further steps might properly have been followed in

this case and that justice demanded the granting of a new trial. We cannot, under the circumstances, conclude that the trial court abused its discretion in that regard and must, therefore, affirm the action of the trial court in granting a new trial.

AFFIRMED.