PRESTON L. WHITE, APPELLEE, V. LINDA MERTENS, APPELLANT.

404 N.W.2d 410

Filed April 17, 1987.   No. 85-627.

John C. Hahn of Jeffrey, Hahn & Hemmerling, P.C., for appellant.

Stanley D. Cohen and Deborah K. Long, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Plaintiff, Preston L. White, brought an action under the

Uniform Declaratory Judgments Act, Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985), seeking a declaration that he is the father of a daughter born out of wedlock in late 1981 to the defendant mother, Linda Mertens, and, as such, has a right to visit his daughter. The court declared that plaintiff was the father of the child in question; awarded the care, custody, and control of the child to the mother; established a visitation schedule for the father; and ordered the father to make future support payments. While during the course of the proceedings the mother stipulated that plaintiff is the father of the child in question, she nonetheless appeals, claiming that the district court erred in (1) finding it had subject matter jurisdiction, (2) finding the father had not abandoned the child, (3) finding she was not entitled to reimbursement for past expenses, and (4) finding she was not entitled to an attorney fee. She also claims that she was entitled to a jury trial on the question of whether the father abandoned the child and therefore forfeited his parental rights. The record establishes, however, that she waived a jury, if any right to such existed, a matter we do not decide; therefore, nothing remains to be said about that matter. The other claims also being without merit, we affirm.

The mother and father met in 1979 and began dating. After a period somewhat in excess of a year, the mother moved in with the father. Thereafter, the couple lived together as husband and wife and planned to marry, but did not do so, at least in part because of strong objections from the mother's family.

When the mother was approximately 7 months' pregnant, she left the father's home under circumstances which are in dispute. The father testified she moved out without telling him and for reasons which were still not clear to him at the time of trial, although the mother had said she was under pressure from her family to leave. The mother, on the other hand, testified that the father told her to leave and said if she did not move her things, he would move them for her.

There is also a dispute as to when the father learned of the child's birth. There is testimony that he was told when the mother began to deliver the child; he, however, said he did not learn of the child's birth until 2 weeks after the event.

In January of 1983 the father wanted blood tests performed

to establish his claim of paternity, but the mother refused because she "didn't think tests were necessary." Nonetheless, after the father commenced this action on February 25, 1983, the mother initially denied that he was the father until after blood tests confirmed his paternity.

The approximately 12 visits which took place between the father and child prior to suit were arranged as the result of telephone calls between the father and mother. They took place at the father's home, notwithstanding the mother's reluctance to go there because of the frequent presence of the father's then girlfriend, whom he later married. Visits could not take place at the mother's home because of the hostility of the mother's family, with whom she lived, toward the father. Indeed, it was the father's threat to visit his child at the mother's home which persuaded the mother to take the child to the father. The father spent approximately $1,000 on clothes and gifts for his daughter prior to the filing of this suit.

The first claim of error rests on the fact that the paternity statutes in effect at the times this action was brought and tried, Neb. Rev. Stat. §§ 13-106 and 13-113 (Reissue 1983), did not empower the father of a child born out of wedlock to maintain a suit to establish his paternity. She argues that, therefore, an unwed man cannot determine his status as the father of a child born out of wedlock in an action for declaratory judgment, and, thus, the district court lacked jurisdiction over the subject matter of the present action, as a consequence of which her stipulation concerning paternity is of no force or effect. (The present statute, Neb. Rev. Stat. § 43-1411 (Cum. Supp. 1986), now authorizes one claiming to be the father of a child born out of wedlock to bring suit to determine his paternity.)

The mother is quite correct in asserting that this court has said a number of times and in a variety of contexts that an action for the purpose of determining the paternity of a child born out of wedlock depends upon statutory authority for its maintenance and must be brought in strict accordance with such statutes. *County of Hall ex rel. Wisely v. McDermott*, 204 Neb. 589, 284 N.W.2d 287 (1979) (reversed judgment obtained by county on behalf of mother against alleged father of child born out of wedlock because he had not been told of his right to

a jury trial); *Riederer v. Siciunas*, 193 Neb. 580, 228 N.W.2d 283 (1975) (held court had authority to increase award for child support entered in earlier paternity action); *Boersen v. Huffman*, 189 Neb. 469, 203 N.W.2d 489 (1973) (states determination of paternity not a proper issue in an annulment action); *Paltani v. Creel*, 169 Neb. 591, 100 N.W.2d 736 (1960) (held that action in equity could not be maintained to establish paternal rights to children born out of wedlock); *Timmerman v. Timmerman*, 163 Neb. 704, 81 N.W.2d 135 (1957) (modified and affirmed a child support order against father of child born out of wedlock in cause of action which began as one for divorce but which found marriage to be invalid).

However, the mother's premise that an unwed man cannot determine his status as the father of a child born out of wedlock by an action for declaratory judgment is incorrect, notwithstanding the dicta and holdings of the foregoing cases. In *Carlson v. Bartels*, 143 Neb. 680, 10 N.W.2d 671 (1943), the next friend of children born out of wedlock brought a declaratory judgment action to determine that the decedent was their father and that his estate was liable for their care, support, and maintenance. While the *Carlson* court concluded that the matter was one in probate within the exclusive jurisdiction of the county court while pending on contingent claims, and thus reversed a judgment in favor of the next friend, it nonetheless stated that paternity could be determined by an action for declaratory judgment. It is true that *Carlson* differs from the present case in that the next friend was empowered to sue by the paternity statutes. Nonetheless, the *Carlson* dictum recognizes that paternity is a "right," "status," or "legal relation" within the ambit of a declaratory judgment action.

This comports with the fact that the relationship between a parent and child is a constitutionally protected one and that although the father of a child born out of wedlock need not be treated in all respects as is the father of a child born in wedlock, the relationship between an unwed father and his child is not devoid of constitutional protection. See, *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978); *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). The *Carlson* dictum is also in keeping with the determinations

of other states that, if no other method exists, equal protection principles require that fathers of children born out of wedlock be permitted to file declaratory judgment actions to determine their status and rights. *Anonymous v. Anonymous*, 472 So. 2d 640 (Ala. Civ. App. 1984), *writ quashed* 472 So. 2d 643 (Ala. 1985); *Thornsberry v. Superior Court, Mohave County*, 146 Ariz. 517, 707 P.2d 315 (1985); *R.McG. v. J.W.*, 200 Colo. 345, 615 P.2d 666 (1980); *Kendrick v. Everheart*, 390 So. 2d 53 (Fla. 1980); *Willmott v. Decker*, 56 Haw. 462, 541 P.2d 13 (1975); *In re Petition of Sullivan*, 134 Ill. App. 3d 455, 480 N.E.2d 1283 (1985); *Pritz v. Chesnul*, 106 Ill. App. 3d 969, 436 N.E.2d 631 (1982); *A.—B.— v. C.—D.—*, 150 Ind. App. 535, 277 N.E.2d 599 (1971); *Johannesen v. Pfeiffer*, 387 A.2d 1113 (Me. 1978); *K.D.R. v. D.E.S.*, 637 S.W.2d 691 (Mo. 1982); *L.M.K. v. D.E.K.*, 685 S.W.2d 614 (Mo. App. 1985); *Brauch v. Shaw*, 121 N.H. 562, 432 A.2d 1 (1981); *Boatwright v. Otero*, 91 Misc. 2d 653, 398 N.Y.S.2d 391 (1977); *Crane v. Battle*, 62 Misc. 2d 137, 307 N.Y.S.2d 355 (1970); *In re Mengel*, 287 Pa. Super. 186, 429 A.2d 1162 (1981); *Slawek v. Stroh*, 62 Wis. 2d 295, 215 N.W.2d 9 (1974). Thus, the district court had jurisdiction to determine the matter of paternity.

Parties are bound by stipulations voluntarily made and are granted relief therefrom only under exceptional circumstances. *State v. Wells*, 197 Neb. 584, 249 N.W.2d 904 (1977). See, also, *State v. Davis*, 224 Neb. 205, 397 N.W.2d 41 (1986). The record reveals no exceptional circumstances which would entitle the mother to relief from her stipulation on the issue of paternity; thus, the first claim of error fails.

The mother nonetheless correctly observes in connection with the second claim of error that one may forfeit his or her parental rights by conduct. See *Stratman v. Hagen*, 221 Neb. 157, 376 N.W.2d 3 (1985). She contends that by asking her to leave, by not marrying her, by not being with her when the child was born, by refusing to "sign the birth certificate," by failing to support the child, and by seeing the child only infrequently, the father abandoned his daughter and is thereby now estopped from asserting his parental right to visit with her.

We cannot agree. Much of what the mother complains about, even assuming the fault rested solely with the father,

concerns the father's conduct toward her, not toward his daughter. While the mother asserts the father did not sign the birth certificate, the record reflects that she told him she had shown him as the father on the certificate. The hostility of the mother's family toward the father excuses the father's failure to visit his daughter with greater frequency, as well as his failure to provide more support and maintenance. See *In re Guardianship of Sain*, 217 Neb. 96, 348 N.W.2d 435 (1984), *aff'g after remand* 211 Neb. 508, 319 N.W.2d 100 (1982).

The mother also calls to our attention the fact that under the provisions of Neb. Rev. Stat. § 43-104.02 (Reissue 1984), unless the father of a child born out of wedlock files a notice of intent to claim paternity within 5 days of the child's birth, neither his relinquishment for nor consent to adoption is required. That statute, however, by its very terms has no application in a dispute between the biological father and mother of a child born out of wedlock. See *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 385 N.W.2d 448 (1986).

*Cox v. Hendricks*, 208 Neb. 23, 302 N.W.2d 35 (1981), establishes that visitation of a child born out of wedlock is to be decided on the basis of what is in the best interests of the child and depends upon the existence of a familial relationship with the child. The record satisfies us that the father established as much of a familial relationship with his daughter as the circumstances permitted and that it would be in the best interests of the child to continue and to nurture that relationship.

In the third claim of error the mother complains that the district court did not order the father to pay for past child support. We observe, however, that the matter of past child support was not raised by the pleadings in the district court. Since this court ordinarily will not consider issues not properly raised in the pleadings nor litigated at trial, *Hewson v. Stevenson, post* p. 254, 404 N.W.2d 35 (1987), and *Norris v. Iowa Beef Processors*, 224 Neb. 867, 402 N.W.2d 658 (1987), that is all that need be said about the matter.

The fourth claim of error, that she was not awarded an attorney fee, is equally spurious. Attorney fees have not been allowed in paternity actions. *State ex rel. Toledo v. Bockmann,*

218 Neb. 428, 355 N.W.2d 521 (1984). Moreover, one of the factors to be considered in awarding such a fee is the result obtained; the mother being unsuccessful, she is for that additional reason not entitled to an attorney fee. See *Meyers v. Meyers*, 222 Neb. 370, 383 N.W.2d 784 (1986).

AFFIRMED.