IN RE ADOPTION OF JADEN M.
RONALD L. AND TRACEY L., APPELLEES,
V. BRIAN H., APPELLANT.
725 N.W.2d 410

Filed December 22, 2006. Nos. S-05-1527, S-06-073.

James R. Walz for appellant.

Sheri A. Wortman, of McHenry, Haszard, Hansen, Roth & Hupp, P.C., and Susan Kubert Sapp, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees.

HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and CARLSON, Judge.

CONNOLLY, J.

Under Neb. Rev. Stat. §§ 43-104.02 and 43-104.05 (Reissue 2004) (biological father registry statutes), a putative father who intends to claim paternity and obtain custody of a child born out of wedlock must file notice with the biological father registry and adjudicate his claim within 30 days. The issue is whether a father who has previously been determined in a paternity action to be the biological father is required to comply with the registry statutes to preserve his rights in a subsequent adoption proceeding.

After Brian H. filed a paternity action in district court, the court determined he was the biological father of Jaden M. The court ordered him to pay child support and granted him visitation. Over 1 year later, with the consent of Jaden's mother, Jaden's stepfather filed for adoption. The county court determined that Brian's consent to the adoption was not required because Brian failed to comply with §§ 43-104.02 and 43-104.05. We reverse, because these statutes do not apply to a putative father who has been previously determined to be the biological father.

## BACKGROUND

On July 14, 1999, Jaden was born out of wedlock to Tracey L. and Brian. For the first 3 years of Jaden's life, Brian sporadically visited Jaden.

In April 2002, Brian filed a petition in district court for determination of paternity, visitation, and an order requiring him to pay child support. On February 25, 2003, the district court determined that Brian was Jaden's biological father, awarded legal custody to Tracey, and ordered weekly and holiday visitation. The court also ordered Brian (1) to reimburse Tracey for one-half of the medical expenses she incurred in giving birth to Jaden, (2) to pay $400 per month in child support, and (3) to pay one-half of Jaden's future medical and dental expenses not covered by health insurance. Although he missed some payments, from June 1, 2002, to August, 16, 2004, Brian paid $5,603.40 in child support.

On April 5, 2003, Tracey married Ronald L. On October 14, Tracey's attorney notified Brian by certified mail that Tracey planned to consent to Jaden's adoption by Ronald. The notice informed Brian that Tracey had identified him as Jaden's biological father, that she intended to consent to Ronald's adopting Jaden, and that Brian could contact Tracey's attorney to deny paternity and waive his rights or relinquish and consent to the adoption.

Later in April, Tracey and Ronald filed an adoption petition in county court. Brian appeared with counsel and objected to the adoption. In October, Tracey filed a verified motion to obtain consent from the district court. The district court gave its consent and found that the county court had exclusive jurisdiction over the adoption and allowed the adoption proceedings to commence in county court.

Brian moved to dismiss the adoption petition, but the county court overruled his motion. In case No. S-05-1527, Tracey and Ronald moved for summary judgment, alleging that under Neb. Rev. Stat. § 43-104.22 (Reissue 2004), Brian's consent was not required. Despite the district court's previous order determining paternity and ordering Brian to pay child support and awarding visitation, the county court granted summary judgment. It held that Brian had failed to file, under § 43-104.02, a notice of

intent to claim paternity with the biological father registry and that he failed to comply with § 43-104.05 by not filing a petition to have his paternity claim adjudicated within 30 days. The court concluded that because Brian did not comply with these provisions, the only consents needed were from Tracey and the district court, which were both on file. ·

On December 15, 2005, the county court in case No. S-06-073 entered an adoption decree, and Brian timely appealed. Brian also appealed the county court's order in case No. S-05-1527, which granted Tracey and Ronald's motion for summary judgment, finding that Brian's consent was not required.

## ASSIGNMENTS OF ERROR

In case No. S-05-1527, Brian assigns that the county court erred in granting Tracey and Ronald's motion for summary judgment. In case No. S-06-073, he assigns that the county court erred in granting the adoption decree.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Didier v. Ash Grove Cement Co., ante* p. 28, 718 N.W.2d 484 (2006). In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment is granted and give such party the benefit of all reasonable inferences deducible from the evidence. See *National Am. Ins. Co. v. Constructors Bonding Co., ante* p. 169, 719 N.W.2d 297 (2006).

■ Statutory interpretation presents a question of law. When reviewing questions of law, we resolve the questions independently of the conclusions reached by the trial court. See *State v. County of Lancaster, ante* p. 376, 721 N.W.2d 644 (2006).

## ANALYSIS

### COMMENT ON JURISDICTION ·

As noted, Brian appealed both the order granting the motion for summary judgment in case No. S-05-1527 and the adoption decree entered in case No. S-06-073. Without deciding if the

order granting the motion for summary judgment was a final, appealable·order, we conclude we have jurisdiction because Brian timely appealed the adoption decree.

## PUTATIVE FATHER REGISTRY PROVISIONS DO NOT APPLY TO BRIAN

The foundation of Nebraska's adoption statutes is the consent of a biological parent to the termination of his or her parental rights. See *In re Adoption of Kassandra B. & Nicholas B.*, 248 Neb. 912, 540 N.W.2d 554 (1995). Consent for adoption is not required, however, of a parent who:

> (a) has relinquished the child for adoption by a written instrument, (b) has abandoned the child for at least six months next preceding the filing of the adoption petition, (c) has been deprived of his or her parental rights to such child by the order of any court of competent jurisdiction, or (d) is incapable of consenting.

Neb. Rev. Stat. § 43-104 (Reissue 2004).

Tracey and Ronald argue that in addition to these exceptions, the consent of any biological father is also not necessary if he fails to comply with §§ 43-104.02 and 43-104.05. Brian counters that the court erred in applying these statutes to him because he is not a putative father. We agree.

Section 43-104.02 requires "a person claiming to be the father of the child" to file notice of his intent to claim paternity and obtain custody with the biological father registry within 5 business days of the child's birth or published notification. Section 43-104.05 requires a "claimant-father" to petition the county court where the child was born to·adjudicate his claim of paternity and right·to custody within 30 days of filing notice under § 43-104.02.

This court has previously held that § 43-104.02 does not apply to a biological father opposing the adoption of his child who is no longer a newborn when the father had acknowledged and supported his child and established strong familial ties. See *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 408 N.W.2d 272 (1987). In that case, the father lived with the child for 19 months after the child's birth, although his contacts·diminished because of conflicts between the mother and father. When

the child was 24 months of age, the mother had the child placed with potential adoptive parents without the father's knowledge or consent. After he learned of the placement, the father filed notice of his intent to claim paternity under § 43-103.02, and the placement parents filed a petition for adoption. The trial court held that the father's consent was not necessary, in part, because his filing for paternity under § 43-103.02 was 2½ years too late.

This court reversed, agreeing with the father that the statute was unconstitutional as applied to him. We adopted the reasoning of a decision from the U.S. Supreme Court: " '[W]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," [citation omitted] his interest in personal contact with his child acquires substantial protection . . . .' " 225 Neb. at 768, 408 N.W.2d at 278, quoting *Lehr v. Robertson*, 463 U.S. 248, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983).

We reasoned that applying the statute would "allow a mother to singlehandedly sever a relationship between father and child." *Id.* at 769, 408 N.W.2d at 278. We concluded that such a result would fly in the face of the statute's intended purpose—to allow for the rapid placement of newborns in families that could commit to raising them when the mother does not know whether the father will claim his child. See, *id.*; *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 385 N.W.2d 448 (1986). See, also, *In re Adoption of Kassandra B. & Nicholas B.*, 248 Neb. 912, 540 N.W.2d 554 (1995) (acknowledging that § 43-104.02 might be inapplicable to father but declining to decide issue based on holding that substitute consent was required even if statute applied).

◼ Similarly, in *White v. Mertens*, 225 Neb. 241, 404 N.W.2d 410 (1987), we determined that § 43-104.02 did not apply when the mother had acknowledged the father. There, the father had provided some support and arranged for visitation when the child was a little over 1 year old. Shortly thereafter, he filed suit to claim paternity. The mother, in resisting visitation rights, argued that the father had not filed a notice of intent to claim paternity under § 43-104.02 within 5 days. This court stated that the statute "by its very terms has no application in a dispute between the biological father and mother of a child born out of wedlock." 225 Neb. at 246, 404 N.W.2d at 413.

Since these decisions, the Legislature has amended the adoption statutes. These amendments clarify that the mother's representative must use due diligence to contact an actual or possible biological father before an adoption can be decreed regardless of whether the father filed notice with the registry. See 1995 Neb. Laws, L.B. 712. Before the enactment of L.B. 712, § 43-104(3) (Reissue 1993) required the written consent of "(3) both parents if living, the surviving parent of a child born in lawful wedlock, or, subject to sections 43-104.02 to 43-104.06, the mother of a child born out of wedlock." In other words, before 1995, only the mother's consent was required if the biological father did not file notice with the registry.

But the current version of § 43-104(3) omits the reference to "sections 43-104.02 to 43-104.06" (Neb. Rev. Stat. § 43-104.06 (Reissue 1993) was repealed by L.B. 712), and requires the written consent of

> (3) both parents of a child born in lawful wedlock if living, the surviving parent of a child born in lawful wedlock, the mother of a child born out of wedlock, *or both the mother and father of a child born out of wedlock as determined pursuant to sections 43-104.08 to 43-104.24.*

(Emphasis supplied.) These statutes were also added as part of L.B. 712. Most of these sections ensure that the biological father receives proper notification of his possible or actual paternity and an opportunity to assert his rights.

There are exceptions to the notification requirements. See Neb. Rev. Stat. § 43-104.15 (Reissue 1995). Other than those exceptions, unless the biological father has executed "a valid relinquishment and consent . . . or . . . a denial of paternity and waiver of rights," the court may not enter a decree of adoption without determining that proper notification of parental rights has been provided. Neb. Rev. Stat. § 43-104.11 (Reissue 2004).

That notification is not limited to the rights of biological fathers who have complied with § 43-104.02. See Neb. Rev. Stat. § 43-104.13 (Reissue 2004). Thus, while easing the procedures for newborn adoptions, the Legislature has also, through these notification provisions, protected the parental rights of biological fathers from unilateral adoption actions by mothers—and not just biological fathers who have the opportunity to protect their

rights under § 43-104.02. That conclusion is bolstered by the Legislature's requirement in § 43-104.01(1) that the biological father registry include the names of adjudicated fathers if the father requests registration, as well as the names of claimant fathers.

It is true that § 43-104.22 provides that in a hearing to determine a biological father's parental rights:

> [T]he biological father's consent is not required for a valid adoption of the child upon a finding of one or more of the following:
>
> . . . .
>
> (7) Notice was provided pursuant to sections 43-104.12 to 43-104.14 and the father failed to timely file an intent to claim paternity and obtain custody pursuant to section 43.104.02.

We, however, conclude that § 43-104.22(7) does not apply to a father who has been adjudicated the child's father in a paternity action.

Applying § 43-104.22(7) infringes upon Brian's constitutionally protected parental rights. Because he has provided support and established familial ties with his biological child, his interest in personal contact with his child has acquired substantial protection. *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 408 N.W.2d 272 (1987). His rights must therefore be determined under the considerations delineated in § 43-104.22, apart from subsection (7).

As in *White v. Mertens*, 225 Neb. 241, 404 N.W.2d 410 (1987), Tracey and Ronald's argument fails because Brian is not "a person claiming to be the father of the child" under § 43-104.02 or a "claimant-father" under § 43-104.05—he is Jaden's biological father. The court erred in applying the registry statutes to circumvent the need for Brian's consent.

### COURT ERRED IN GRANTING DECREE OF ADOPTION IN CASE NO. S-06-073

In the adoption decree proceedings, case No. S-06-073, the court initially noted that in granting Tracey and Ronald's motion for summary judgment, the trial judge (a different trial judge) had found that all the consents required by law had been properly executed. The court then entered the adoption decree.

As detailed in the previous section, the court erred in granting summary judgment. The county court also erred by granting the adoption without Brian's consent. We, therefore, vacate the adoption decree in case No. S-06-073 because it relied on the erroneously granted summary judgment.

## CONCLUSION

We conclude that the county court erred in granting Tracey and Ronald's motion for summary judgment in case No. S-05-1527 because the putative father provisions of § 43-104 do not apply to a previously adjudicated father. We also reverse and vacate the adoption decree entered in case No. S-06-073 as it relied on the erroneously granted summary judgment. We reverse the judgments and remand both causes to the county court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WRIGHT, J., not participating.