775 N.W.2d 404 (2009)
278 Neb. 1057
In re ADOPTION OF CORBIN J., a child under 18 years of age.
Rusti M. and Ilja M., appellees,
v.
John J., appellant.
No. S-09-355.
Supreme Court of Nebraska.
December 4, 2009.
*406 Brian J. Davis, of Berreckman & Davis, P.C., for appellant.
Kelly N. Tollefsen, of Morrow, Poppe, Watermeier & Lonowski, P.C., for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*407 MILLER-LERMAN, J.

NATURE OF THE CASE
The issue in this case is whether a putative biological father who had established a familial relationship with his child is constitutionally required to comply with certain father registry and adoption statutes found at Neb.Rev.Stat. §§ 43-104(3), 43-104.04, and 43-104.22(7) (Reissue 2008) to preserve his rights in a subsequent adoption. The county court for Arthur County determined that John J.'s consent to the adoption of Corbin J. was not required because John failed to comply with the registry statutes. We reverse, because on this record, these statutes do not constitutionally apply to a putative biological father who has established a familial relationship with his child.

STATEMENT OF FACTS
This case arises from the petition to adopt Corbin filed by Ilja M., the child's stepfather. The appellant is John, and the appellees are Rusti M. and Ilja. The minor child, Corbin, was born out of wedlock to Rusti and John in August 1999. Rusti and John are named as Corbin's mother and father on Corbin's birth certificate issued by the State of Colorado, and neither party is disputing that John is Corbin's biological father.
Corbin lived with Rusti and John for the first 3 years of his life. In May 2002, Rusti left the family home with Corbin, without notice to John or indication of where she and the child were going. After leaving, on May 31, Rusti filed a petition to establish paternity, custody, support, and equitable relief in the district court for Keith County, Nebraska. In the petition, Rusti identified John as the biological father of Corbin and requested that the court award child support.
On October 11, 2002, the district court for Keith County entered a temporary order granting John visitation rights with Corbin and ordering that John pay child support and provide health insurance for Corbin.
John's visitations with Corbin had begun in July 2002. John states that the parties would meet halfway between their homes to exchange Corbin. On February 21, 2003, Rusti married Ilja. John states that in September, he went to pick up Corbin in Colorado and that Rusti never arrived. John states he attempted to call Rusti and her mother but that both telephone numbers had been disconnected.
On July 8, 2003, the district court for Keith County dismissed the paternity action for lack of prosecution. Up to that date, John states that he had paid child support amounting to $3,790 and that he has maintained health insurance for Corbin up to the time of the adoption proceedings.
The parties assert different accounts of John's efforts to locate Corbin after the dismissal of the paternity action. John claims that he had no knowledge of Corbin's whereabouts and that he did what he could to locate Corbin. Rusti contends that after leaving John, she returned to live on her family ranch in Keith County and that at all times, John knew the location and telephone number of the ranch, but that John did not attempt to contact her or Corbin.
In September 2008, the attorney representing appellees contacted John and informed him that Ilja was petitioning to adopt Corbin and that adoption papers had been prepared for John to sign. John acknowledges that on December 15, he received a notice titled "In Re Relinquishment of Corbin . . . for Adoption." John further acknowledges that after receipt of this document, he did not file a "Notice of Objection to Adoption and Intent to Obtain Custody" within 5 business days.
*408 On January 7, 2009, appellees filed a petition for adoption in the county court for Arthur County. On January 20, John filed an objection to adoption proceedings and motion to dismiss. In January, John also filed a complaint for determination of paternity and custody in the district court for Arthur County. The issue of abandonment of Corbin by John was not raised in the pleadings, and we do not consider it in our analysis.
All parties filed motions for summary judgment in the county court action. Appellees requested that the court find that the consent of the putative father, John, was not required in this adoption, and John requested that the county court dismiss the case and transfer the proceedings to the district court. John, as the biological father who had previously established a familial relationship with Corbin, challenged the constitutionality of certain adoption statutes as applied to him. The county court entered an order finding that John was a putative father and that he had failed to file the requisite Notice of Objection to Adoption and Intent to Obtain Custody, as provided variously in Neb.Rev. Stat. §§ 43-104 to 43-104.25 (Reissue 2008). As a consequence of these failures, the court reasoned that John's consent was not needed for the adoption to proceed.
After the county court granted appellees' motion for summary judgment, a final adoption hearing was held on March 3, 2009. The recording device malfunctioned, and there is no bill of exceptions from the final adoption hearing. On March 3, an adoption decree was entered allowing Corbin to be adopted by Ilja. John appeals.

ASSIGNMENTS OF ERROR
John argues, restated and summarized, that the county court erred in (1) finding that the provisions of certain adoption statutes found at §§ 43-104 to 43-104.25, regarding the Notice of Objection to Adoption and Intent to Obtain Custody, which on their face eliminate the requirement of John's consent to the adoption proceedings, were constitutionally applied in this case; (2) finding that John is a putative rather than an adjudicated father; (3) overruling John's objection at the final adoption hearing and entering a final adoption decree; and (4) failing to record the final adoption hearing held on March 3, 2009. Given our resolution of this appeal, we do not reach the fourth assignment of error.

STANDARDS OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Hauptman, O'Brien v. Turco, 277 Neb. 604, 764 N.W.2d 393 (2009). In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment is granted and give such party the benefit of all reasonable inferences deducible from the evidence. Id.
Statutory interpretation presents a question of law. When reviewing questions of law, we resolve the questions independently of the conclusions reached by the trial court. See Allen v. Immanuel Med. Ctr., 278 Neb. 41, 767 N.W.2d 502 (2009).

ANALYSIS

John Is a Putative Biological Father With a Familial Relationship to Corbin: On This Record the Adoption Statutes Allowing Corbin's Adoption to Proceed Without John's Consent Were Unconstitutional as Applied to John.
The county court for Arthur County determined that John was the putative father *409 of Corbin and that because of his failure to comply with the relevant adoption statutes, John's consent to Corbin's adoption by Ilja was not required. The court noted that John had failed to file the requisite Notice of Objection to Adoption and Intent to Obtain Custody and relied, in part, on §§ 43-104(3), 43-104.04, and 43-104.22(7) in reaching its conclusion. John asserts that his consent to the adoption of Corbin is required because he is the adjudicated father. In the alternative, he claims his consent is required under constitutional principles. In this regard, John claims that the provisions of the adoption statutes relied on by the court, which on their face eliminate the need for his consent, were unconstitutional as applied to him, because the record establishes that he is Corbin's biological father and that he had established a familial relationship with Corbin. Although we do not agree with John that he is an adjudicated father, we do agree with John's constitutional analysis. We conclude that the challenged statutes were unconstitutionally applied to John, and the court erred on this record when it concluded that John's consent to the adoption was not required.
The following sections of the adoption statutes are relevant to our analysis in this case.
Section 43-104 requires:
(1) Except as otherwise provided in this section and in the Nebraska Indian Child Welfare Act, no adoption shall be decreed unless written consents thereto are filed in the county court of the county in which the person or persons desiring to adopt reside or in the county court in which the separate juvenile court having jurisdiction over the custody of the child is located. . . .
. . . .
(3) Consent shall not be required of a putative father who has failed to timely file (a) a Notice of Objection to Adoption and Intent to Obtain Custody pursuant to section 43-104.02 and, with respect to the absence of such filing, a certificate has been filed pursuant to section 43-104.04.. . .
Section 43-104.01(7) provides:
A person who has been adjudicated by a Nebraska court of competent jurisdiction to be the biological father of a child born out of wedlock who is the subject of a proposed adoption shall not be construed to be a putative father for purposes of sections 43-104.01 to 43-104.05 and shall not be subject to the provisions of such sections as applied to such fathers. Whether such person's consent is required for the proposed adoption shall be determined by the Nebraska court having jurisdiction over the custody of the child pursuant to section 43-104.22, as part of proceedings required under section 43-104 to obtain the court's consent to such adoption.
Section 43-104.02 provides:
A Notice of Objection to Adoption and Intent to Obtain Custody shall be filed with the biological father registry under section 43-104.01 on forms provided by the Department of Health and Human Services (1) within five business days after the birth of the child or (2) if notice is provided after the birth of the child (a) within five business days after receipt of the notice provided under section 43-104.12. . . .
Section 43-104.04 provides:
If a Notice of Objection to Adoption and Intent to Obtain Custody is not timely filed with the biological father registry pursuant to section 43-104.02, the mother of a child born out of wedlock or an agent specifically designated in writing by the mother may request, and the Department of Health and Human *410 Services shall supply, a certificate that no such notice has been filed with the biological father registry. The filing of such certificate pursuant to section 43-102 shall eliminate the need or necessity of a consent or relinquishment for adoption by the putative father of such child.
Section 43-104.08 provides:
Whenever a child is claimed to be born out of wedlock and the biological mother contacts an adoption agency or attorney to relinquish her rights to the child, or the biological mother joins in a petition for adoption to be filed by her husband, the agency or attorney contacted shall attempt to establish the identity of the biological father and further attempt to inform the biological father of his right to execute a relinquishment and consent to adoption, or a denial of paternity and waiver of rights, in the form mandated by section 43-106, pursuant to sections 43-104.08 to 43-104.25.
Section 43-104.12 provides:
In order to attempt to inform the biological father or possible biological fathers of the right to execute a relinquishment and consent to adoption or a denial of paternity and waiver of rights, the agency or attorney representing the biological mother shall notify, by registered or certified mail, restricted delivery, return receipt requested:
(1) Any person adjudicated by a court in this state or by a court in another state or territory of the United States to be the biological father of the child;
. . . .
(3) Any person who is recorded on the child's birth certificate as the child's father;
(4) Any person who might be the biological father of the child who was openly living with the child's biological mother within the twelve months prior to the birth of the child.
Section 43-104.22 provides:
At any hearing to determine the parental rights of an adjudicated biological father or putative biological father of a minor child born out of wedlock and whether such father's consent is required for the adoption of such child, the court shall receive evidence with regard to the actual paternity of the child and whether such father is a fit, proper, and suitable custodial parent for the child. The court shall determine that such father's consent is not required for a valid adoption of the child upon a finding of one or more of the following:
(1) The father abandoned or neglected the child after having knowledge of the child's birth;
. . . .
(7) Notice was provided pursuant to sections 43-104.12 to 43-104.14 and the putative father failed to timely file a Notice of Objection to Adoption and Intent to Obtain Custody pursuant to section 43-104.02.
Section 43-104.25 provides:
With respect to any person who has been adjudicated by a Nebraska court of competent jurisdiction to be the biological father of a child born out of wedlock who is the subject of a proposed adoption:
(1) Such person shall not be construed to be a putative father for purposes of sections 43-104.01 to 43-104.05 and shall not be subject to the provisions of such sections as applied to such fathers[.]
For his initial argument, John claims that as a result of the Keith County paternity action, he is an adjudicated father, and that consequently, his consent for an adoption is required on this basis.
*411 In this case, the county court concluded that John had not been adjudicated to be the father of Corbin. We agree with the court's analysis in this regard.
Based on our ruling in In re Adoption of Jaden M., 272 Neb. 789, 725 N.W.2d 410 (2006), and the recent amendments to the adoption statutes found in 2007 Neb. Laws, L.B. 247, consent of the father of a child born out of wedlock who has been adjudicated to be the father by a court is required for an adoption to proceed unless the Nebraska court having jurisdiction over the custody of the child determines otherwise pursuant to § 43-104.22. See § 43-104.01(7). An adjudicated father is an individual determined to be the father by a court of competent jurisdiction. See id.
The only court order entered addressing John's paternity was a temporary order in the district court for Keith County, requiring John to pay child support and to provide medical insurance and designating visitation. The action in which the temporary order was entered was ultimately dismissed for lack of prosecution. This temporary order was not a final court-ordered determination that John was Corbin's father. We agree with the county court that John was not adjudicated as Corbin's father.
Because John was not adjudicated as Corbin's father, the issue presented in this case is whether, consistent with constitutional principles, in order to proceed with the adoption in the absence of an allegation of abandonment, the parties needed the consent of John, a putative father, whom the parties acknowledge to be the biological father of the child and who had established a familial relationship with the child. We conclude on this record that applying §§ 43-104(3), 43-104.04, and 43-104.22(7) infringed on John's constitutionally protected parental rights.
The record is undisputed that appellees provided John with notice of the adoption proceedings on December 15, 2008. Indeed, they obtained and attached to the petition for adoption a certificate obtained pursuant to § 43-104.04 from the Nebraska Department of Health and Human Services dated December 29, 2008, stating that John did not file a Notice of Objection to Adoption and Intent to Obtain Custody. Appellees claim that under the statutes, because they provided John with notice of the adoption proceedings and he did not file a Notice of Objection to Adoption and Intent to Obtain Custody within 5 business days, John's consent is not required. See §§ 43-104(3), 43-104.04, and 43-104.22(7). Contrary to appellees' analysis, we conclude that John's failure to file within 5 days does not resolve the issue of whether John's consent was required, because we are persuaded that these statutory requirements were unconstitutionally applied to John.
Recently, in In re Adoption of Jaden M., supra, we noted that this court has adopted and applied the reasoning of the U.S. Supreme Court in Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), regarding the constitutionally protected rights of unwed fathers under the 14th Amendment's Due Process Clause. In Lehr, the U.S. Supreme Court stated that "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by `com[ing] forward to participate in the rearing of his child' [citation omitted] his interest in personal contact with his child acquires substantial protection under the Due Process Clause." 463 U.S. at 261, 103 S.Ct. 2985. When we consider John's constitutional challenge in our analysis, it is this constitutionally protected right that guides our decision.
*412 Prior to Lehr, the Court had addressed the interests of unmarried biological fathers in a series of cases. In Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Court held an Illinois law which presumed that all unmarried biological fathers were unfit parents was unconstitutional. In Quilloin v. Walcott, 434 U.S. 246, 256, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), the Court permitted the adoption of a child by his stepfather over the objection of his biological father because the biological father had "never exercised actual or legal custody over his child, and thus has never shouldered any significant responsibility with respect to the daily supervision, education, protection, or care of the child." In Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), the Court held that a New York statute that required the consent of an unmarried mother to the adoption of her children but contained no similar requirement for the consent of an unmarried biological father violated equal protection where the unmarried biological father had developed a substantial relationship with his children, had lived with the children and their mother during the period in which both children were born, and had provided financial support for the family.
In a concurring opinion, Chief Justice Lewis of the Supreme Court of Florida observed, and we agree, that "[a] unifying premise between [sic] these cases is that the Court draws a distinction between unmarried biological fathers who have developed a relationship with their child and fathers without such a relationship." Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 204 (Fla.2007) (Lewis, C.J., concurring in result only). Similarly, in In re Adoption of Jaden M., 272 Neb. 789, 725 N.W.2d 410 (2006), we concluded that the predecessor to the current § 43-104.22(7), which eliminated the consent requirement of certain biological fathers, infringed upon the constitutionally protected parental rights of the father of the child proposed for adoption. In so concluding, we noted that because the father in In re Adoption of Jaden M. had "provided support and established familial ties with his biological child, his interest in personal contact with his child has acquired substantial protection." 272 Neb. at 796, 725 N.W.2d at 415. We noted in In re Adoption of Jaden M. that our holding therein was anticipated by prior Nebraska jurisprudence. See, In re Application of S.R.S. and M.B.S., 225 Neb. 759, 408 N.W.2d 272 (1987); White v. Mertens, 225 Neb. 241, 404 N.W.2d 410 (1987).
In this case, the record shows that after Corbin's birth in August 1999, Rusti, John, and Corbin lived together for 3 years and John established familial ties with Corbin. There is no dispute that John is the biological father of Corbin and is named as the father on the birth certificate. Based on these facts and the relevant jurisprudence explained above, we conclude that John's interest in his child had acquired substantial constitutional protection and that the court erred when it ruled John's consent to the adoption was not required and granted summary judgment in favor of appellees.
We conclude that for an adoption to proceed, the consent of the biological father who has established a familial relationship with his child is required unless, under § 43-104(2), the party seeking adoption has established that the biological parent:
(a) has relinquished the child for adoption by a written instrument, (b) has abandoned the child for at least six months next preceding the filing of the adoption petition, (c) has been deprived of his or her parental rights to such *413 child by the order of any court of competent jurisdiction, or (d) is incapable of consenting.
Accordingly, the court erred when it allowed the adoption of Corbin to proceed without John's consent due to John's failure to file certain notices. Because John has acquired substantial protection in his right to have contact with Corbin, §§ 43-104(3), 43-104.04, and 43-104.22(7) were unconstitutionally applied to John. The grant of summary judgment in favor of appellees, based on the determination that John's consent was not required, was error.

The Trial Court Erred in Granting the Decree of Adoption.
Because we have concluded that the court erred in granting summary judgment in favor of appellees, we further conclude that the county court erred in granting the adoption of Corbin by Ilja without John's consent. We therefore reverse the grant of summary judgment, vacate the adoption decree entered on March 3, 2009, and remand the cause for further proceedings consistent with this opinion.

CONCLUSION
On this record, where no issue of abandonment has been raised, the statutory adoption provisions allowing the adoption of Corbin to proceed without John's consent, where John is the biological father of Corbin and had established a familial relationship with him, were unconstitutionally applied to John. Therefore, the grant of summary judgment and the entry of the adoption decree by the county court in reliance on these statutory provisions was error. The grant of summary judgment is reversed, the adoption decree is vacated, and the matter is remanded for further proceedings consistent with this opinion.
REVERSED AND VACATED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.