In re Estate of Yula E. Steppuhn, deceased.
Eula Mae Hawkins, Personal Representative of the Estate
of Yula E. Steppuhn, deceased, and Donald Tweedy,
appellees, v. LoRayne VanWyk, Personal Representative
of the Estate of Henry A. Steppuhn, deceased, appellant.

377 N.W.2d 83

Filed December 6, 1985.   No. 84-202.

Joseph C. Byam of Byam & Byam, for appellant.

Neil W. Schilke of Sidner, Svoboda, Schilke, Wiseman, Thomsen & Holtorf, for appellee Hawkins.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

White, J.

This is an appeal from an order of the district court for Dodge County affirming the decision of the county court that it had subject matter jurisdiction of the case, that the title to the bearer bonds in question was held as tenants in common, and that the appellees' decedent's estate was entitled to one-half of the bearer bonds, or one-half of their value, plus one-half of any interest accrued from March 18, 1979, the date of Yula E.

Steppuhn's death.

The appellant in this case is the personal representative of Henry A. Steppuhn, deceased, and the appellees are the personal representative of Yula E. Steppuhn, deceased, and Donald Tweedy, the residuary devisee of Yula E. Steppuhn.

This is a dispute over ownership of bearer bonds owned by Henry Steppuhn and Yula Steppuhn, husband and wife. Henry and Yula were married for 25 years. Yula died on March 18, 1979, and Henry died on February 3, 1983.

Prior to their deaths, the parties maintained a joint account with the investment banking firm of Robert E. Schweser Company, Incorporated, in Omaha, Nebraska. When the account was opened, Yula made a specific request that it be a joint account under the names "Henry and/or Yula Steppuhn." All the invoices received by the Steppuhns when they purchased bonds that were from Robert E. Schweser Company in the Steppuhn account appeared as a joint account in the records of Robert E. Schweser Company, and if one of them had died, the company would have delivered any bonds in its possession to the survivor. The office orders and confirmations from the Robert E. Schweser Company show that the bearer bonds were sold to "Mr. Henry Steppuhn and/or Mrs. Yula Steppuhn."

The Steppuhns purchased bearer bonds from the Robert E. Schweser Company out of funds from their joint checking account at First National Bank and Trust Company of Fremont. The bonds were delivered to the Steppuhns, receipted for by either Henry or Yula, or in some cases both, and placed in a safe-deposit box at Equitable Federal Savings & Loan Assn. in Fremont, Nebraska. The safe-deposit box was leased jointly under the names "Henry Steppuhn and Yula Steppuhn," and both Henry and Yula had access to the safe-deposit box at all times.

The Steppuhns had been married for 25 years and were retired. The Steppuhns would go to the safe-deposit box, clip the coupons from the bonds when due, and deposit the funds in their joint checking account.

When Yula Steppuhn became ill and was in the hospital, she made sure, in the event anything happened to her, that LoRayne VanWyk knew about the bonds and could take Henry to the

safe-deposit box and help him clip the coupons and deposit the funds in the Steppuhns' joint checking account. In a letter to her sister-in-law before her death, Yula stated, "We have Municipal bonds in bank box 5991 Equitable Savings & Loan . . . . [T]hey are very prompt sending checks to Henry A. Steppuhn."

After Yula's death on March 18, 1979, the bonds remained in the possession of Henry Steppuhn. He continued to clip the coupons and deposit the proceeds in the same checking account. Yula Steppuhn's will does not identify the bonds, but paragraph 1 of her will states in part, "My husband and I have a considerable amount of jointly held property." In addition, a note in Yula Steppuhn's handwriting found in Henry's papers after his death states in part, "We have $25,000 in bank box in Municipal Bonds in Safety Deposit Box - Equitable - Fremont."

On February 3, 1983, Henry Steppuhn died, and on March 9, 1983, a short form inventory was filed in Henry Steppuhn's estate. This inventory included the bearer bonds.

First, we address the issue of subject matter jurisdiction. The county court has been given jurisdiction by the Legislature to handle probate matters. Neb. Rev. Stat. § 24-517 (Cum. Supp. 1984) states in part: "Each county court shall have the following jurisdiction: (1) Exclusive original jurisdiction of all matters relating to decedents' estates, including the probate of wills and the construction thereof."

Neb. Rev. Stat. § 30-2211 (Reissue 1979) states:

(a) To the full extent permitted by the Constitution of Nebraska, the court has jurisdiction over all subject matter relating to (1) estates of decedents, including construction of wills and determination of heirs and successors of decedents, and estates of protected persons; (2) protection of minors and incapacitated persons; and (3) trusts.

(b) The court has full power to make orders, judgments and decrees and take all other action necessary and proper to administer justice in the matters which come before it.

The comment to § 30-2211 states in part: "This section corresponds to section 24-517. . . . Under previous law, county courts have had incidental authority, including incidental

equity jurisdiction, to effectuate its jurisdiction as to probate, guardianship, and trust matters."

We have stated that county courts, in exercising exclusive original jurisdiction over estates, may apply equitable principles to matters within probate jurisdiction. *In re Estate of Layton*, 207 Neb. 646, 300 N.W.2d 802 (1981).

In § 24-517 the Legislature's grant of exclusive original jurisdiction to the county courts in matters relating to decedents' estates is of suspect constitutionality insofar as it relates to matters that would involve either the chancery or common-law jurisdiction of the district courts. However, when a statute is constitutionally suspect, we endeavor to interpret it in a manner consistent with the Constitution. *State v. Kock*, 207 Neb. 731, 300 N.W.2d 824 (1981).

The Nebraska Constitution is clear in its grant of power to the district courts. Neb. Const. art. V, § 9, states, "The district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the Legislature may provide . . . ." In *Village of Springfield v. Hevelone*, 195 Neb. 37, 236 N.W.2d 811 (1975), we stated that the jurisdiction granted the district court by the Constitution cannot be legislatively limited or controlled. The grant of jurisdiction to the district court, however, while original, is not exclusive. That each of two courts may possess the same original jurisdiction is clear, but that two separate courts may not exercise exclusive jurisdiction is also clear. Our previous opinions have not always addressed this point. In considering the difference between exclusive and original, the apparent conflict between the jurisdiction of the county court and the district court vanishes.

In the instant case the county court had subject matter jurisdiction. The claim by the personal representative of Yula's estate in property in the estate of her husband, Henry, is clearly an action relating to the decedent's estate.

Next, we address the issue of whether the bearer bonds were held as a tenancy in common or as a joint tenancy. Since bearer bonds do not indicate title on their face, one must look to other evidence to determine title and, as in this case, whether they are owned as tenants in common or as joint tenants with right of survivorship. In matters involving joint ownership a tenancy in

common is ordinarily presumed. *Whiteside v. Whiteside*, 159 Neb. 362, 67 N.W.2d 141 (1954). In order to create a joint tenancy in this state, the intention of the parties must be clearly expressed. If the question is whether a joint tenancy or a tenancy in common has been created, the ordinary rules apply: the presumption is in favor of a tenancy in common, and in order to find a joint tenancy the court must find a clear expression of an intent to create a joint tenancy. Volkmer, *Nebraska Law of Concurrent Ownership*, 13 Creighton L. Rev. 513 (1979).

In this case the testimony revealed that the parties intended to set up a "joint account" with the investment banking firm, and all of the bonds were purchased from this firm. All of the invoices were in both of their names, and their account was listed as "Mr. Henry Steppuhn and/or Mrs. Yula Steppuhn." It is clear from the last writings she made in the hospital before her death that Yula's intention was that the bonds would go to Henry upon her death. From the intentions of the parties it is clear that the bearer bonds were held as a joint tenancy.

This case is distinct from *White v. Ogier*, 175 Neb. 883, 125 N.W.2d 68 (1963), where the only evidence was that the money used to purchase the bearer bonds came from a joint account. With respect to the Steppuhns (from the time of purchase of the bonds until their death), the evidence is clear that the bonds were intended to be owned in joint tenancy.

AFFIRMED IN PART, AND IN PART REVERSED.

KRIVOSHA, C.J., concurs in the result.