SUSAN L., APPELLANT, V.
STEVEN L., APPELLEE.
729 N.W.2d 35

Filed February 2, 2007. No. S-06-102.

Sheri A. Wortman, of McHenry, Haszard, Hansen, Roth & Hupp, P.C., for appellant.

Christopher A. Furches, of Johnson, Flodman, Guenzel & Widger, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

In October 2000, the Supreme Court of British Columbia, Canada, issued an original custody determination granting "sole interim custody" of Steffany L. to her mother, Susan L. In accordance with the order, Susan moved with Steffany to Lincoln, Nebraska, and they have lived in Nebraska since then. After Steffany reported sexual abuse by her father, Steven L., during visitation in Canada, Susan asked that the district court for Lancaster County "assume jurisdiction over the final determination of paternity, custody and support." Her request was under the Convention on the Civil Aspects of International Child Abduction (Hague Convention), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, as implemented by the International Child Abduction Remedies Act (ICARA), 42 U.S.C. §§ 11601 to 11611 (2000 & Supp. III 2003).

Because the Canadian court refused to cede jurisdiction to Nebraska, and Steven still resides in British Columbia, the Uniform

Child Custody Jurisdiction and Enforcement Act (UCCJEA), Neb. Rev. Stat. §§ 43-1226 to 43-1266 (Reissue 2004), provides that Nebraska does not have jurisdiction to modify the custody determination. Susan asserted, however, that the application of the UCCJEA to bar the district court's jurisdiction in this case was preempted by the Hague Convention and that the UCCJEA violated the Nebraska Constitution in various respects. The district court concluded it did not have jurisdiction to modify the Canadian custody order, and Susan appeals.

## BACKGROUND

Susan and Steven were both living in British Columbia when their relationship resulted in the birth of Steffany on March 19, 1998. Susan and Steven were never married. Steven is a citizen of Canada, while Susan is a citizen of the United States.

On October 18, 2000, the Supreme Court of British Columbia, a Canadian trial court of general jurisdiction, issued an "Interim Order" granting sole interim custody of Steffany to Susan and allowing Susan to move with Steffany to Nebraska. The court also specified interim access rights for Steven and various elements of "interim joint guardianship." Susan and Steffany have lived in Lincoln since October 2000.

After returning from visitation with Steven during the spring of 2004, Steffany reported to her therapist various incidents which led the therapist to believe that Steffany had been sexually abused by Steven during the visit. The alleged abuse was reported to the Lincoln Police Department.

The Lincoln police contacted the police department in Delta, British Columbia, so that it could investigate the allegations of abuse. The therapist's report and taped interviews by the Lincoln police were forwarded to the Delta police. Steven voluntarily suspended Steffany's scheduled summer visitation. The Delta police conducted an investigation and, in September 2004, advised that they were not going to bring criminal charges against Steven.

Susan filed a "Petition for Registration of Foreign Judgment" with the district court for Lancaster County. Around this same time, Susan filed a motion with the Supreme Court of British Columbia, asking the Canadian court to decline to exercise jurisdiction over Steffany in favor of Nebraska. Susan also filed a

motion with the district court "to assume jurisdiction and suspend visitation." The motion referred to the pending motion in Canada and also asserted that recent allegations of abuse warranted the court's exercise of temporary emergency jurisdiction under § 43-1241. The parties apparently agreed at that time that unless the British Columbia court declined jurisdiction, the district court would not have jurisdiction over Steffany's custody.

On November 19, 2004, the Supreme Court of British Columbia issued an order denying Susan's motion for the court to decline jurisdiction. The court noted that there were relevant witnesses in both countries and that the alleged abuse took place in British Columbia. The court stated that it could not reach any conclusion about the veracity of the allegations of abuse based upon the evidence currently before it. Still, the court did modify the existing access order to provide that Steven and Steffany would not sleep in the same bedroom and that when Steven was with Steffany, another adult would always be present. The court also set forth specific limitations to Susan's telephone access during Steffany's visits with Steven and denied a motion by Steven to increase his access time. Susan filed an application before the British Columbia Court of Appeal to appeal the November 19 order.

Relying on the November 19, 2004, order, Steven filed an objection in the district court for Lancaster County to Susan's motion to assume jurisdiction and suspend visitation. The hearing on Susan's motion to assume jurisdiction and suspend visitation was continued by agreement of the parties. On December 17, Susan filed a motion to assume temporary emergency jurisdiction to prevent Steffany's upcoming Christmas visitation with Steven. On December 23, the district court denied the motion, but visitation did not take place. On February 1, 2005, Steven filed a motion in the district court to enforce the Canadian custody and visitation orders.

The British Columbia Court of Appeal, on January 14, 2005, denied Susan's motion for leave to appeal the November 19, 2004, order, explaining that the appeal was merely an attempt to overturn the discretionary decision of the trial judge as to whether British Columbia was the proper forum for future custody issues relating to Steffany. On February 22, 2005, the district court

for Lancaster County granted Steven's motion to enforce the Canadian visitation orders.

Visitation again took place in the summer of 2005, when Steffany was 7 years old. Although Steffany had undergone counseling and had a code word to let Susan know if she needed help, Susan apparently was unable to get any of her calls through to Steffany during the visit. Steffany was allegedly very upset after returning to Susan and eventually reported more incidents of sexual abuse by Steven during that visit. The Delta police were again contacted with regard to the new allegations and were sent copies of interviews with Steffany and other relevant persons in Nebraska. Again, the Delta police did not press charges against Steven.

On November 28, 2005, Susan filed in the district court for Lancaster County a "Complaint to Establish Paternity, Determine Custody, Set and Define Support and Modify an Interim Order Issued by the Supreme Court of British Columbia." On December 16 and 19, Susan filed a motion to "assume jurisdiction" and an amended motion of the same. Susan alleged that the district court should assume jurisdiction under the Hague Convention and should declare § 43-1230(a) and (b) unconstitutional to the extent that, read in conjunction with § 43-1240(1), the provisions abdicate authority to determine jurisdiction over a child to a court of a foreign country.

In October 2005, Steven filed an affidavit with the Supreme Court of British Columbia requesting additional time with Steffany during Steffany's Christmas vacation in 2005 and spring break in 2006. Susan again asked the court to vary the November 19, 2004, order so as to decline jurisdiction over Steffany in favor of Nebraska. Alternatively, Susan asked the court to cede jurisdiction to Nebraska to adjudicate the "complaint of protection" of Steffany and defer determination of jurisdiction over custody and access until a factual determination on the protection complaint had been made. Until a final determination of jurisdiction, Susan asked that Steven's visitation either be suspended or take place in Nebraska, supervised by a professional supervision agency. On December 14, 2005, the Canadian court denied Susan's application. The court granted Steven's application for additional visitation days and ordered that the supervision provisions contained in the November 19, 2004, order remain in full force and effect.

The district court for Lancaster County, on December 22, 2005, denied Susan's December 19 amended motion to "assume jurisdiction" to modify custody and visitation. Susan appeals from the December 22 order.

## ASSIGNMENTS OF ERROR

Susan asserts that the district court erred in determining (1) that it did not have jurisdiction over the issues of paternity, custody, visitation, and support for Steffany; (2) that it did not have jurisdiction to suspend visitation between Steffany and Steven; (3) that the UCCJEA was not preempted by the Hague Convention; and (4) that § 43-1230(a) and (b) is not unconstitutional.

## STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law, which requires an appellate court to reach a conclusion independent from that of the trial court. *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006).

## ANALYSIS

Susan appeals the order of the district court finding that it did not have jurisdiction to modify the terms of the Canadian custody orders and accordingly could not "assume jurisdiction" pursuant to Susan's motion. The UCCJEA, § 43-1240, provides that except for temporary emergency jurisdiction under § 43-1241, a court of this state may not modify a child custody determination made by a court of another state unless this state would otherwise have jurisdiction under § 43-1238(a)(1) or (2) and the other state has lost exclusive continuing jurisdiction under § 43-1239; the child, the child's parents, and any person acting as a parent no longer reside in the other state; or the other state determines under § 43-1244 that this state would be a more convenient forum. Under § 43-1230, a court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying §§ 43-1226 to 43-1247, although this state need not apply the UCCJEA if the child custody law of a foreign country violates fundamental principles of human rights.

Steven continues to reside in Canada and maintains a relationship with Steffany. The Canadian court has declined Susan's

requests that it cede jurisdiction to Nebraska as the "more appropriate forum." See § 43-1238(a)(2). There is no dispute that under the UCCJEA, the Canadian court maintains exclusive continuing jurisdiction over legal custody, physical custody, and visitation with respect to Steffany. See *Atchison v. Atchison*, 256 Mich. App. 531, 664 N.W.2d 249 (2003). Susan does not claim that Canadian custody law violates fundamental human rights, and, in fact, it appears that Susan has not sought in the Canadian courts a full hearing on the alleged abuse. The issue presented is whether the Hague Convention or the Nebraska Constitution prohibits the application of the UCCJEA jurisdictional provisions which give the Canadian court exclusive jurisdiction over custody determinations involving Steffany. We conclude that they do not.

### PREEMPTION

We first address Susan's argument that the UCCJEA provisions are preempted by the Hague Convention and its implementing law, the ICARA. We find no merit to Susan's preemption argument because we simply do not find either the Hague Convention or the ICARA applicable to this case. Because the Hague Convention and the ICARA do not concern the controversy presently before us, the issue of preemption does not arise.

As explained in 42 U.S.C. § 11601(a)(4) of the ICARA, the Hague Convention establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights. Section 11603(b) provides that "[a]ny person seeking to initiate judicial proceedings under the [Hague] Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action . . . ." Section 11603(a) grants state and federal district courts concurrent original jurisdiction to hear such actions. But no action concerning Steffany has been commenced under the Hague Convention.

Because she is neither the plaintiff nor the defendant in an action under the Hague Convention, Susan's preemption argument rests on the alleged "underlying [premise]" of the Hague Convention that custody disputes be decided in the child's place of "'habitual residence'" and its "foremost commitment" to

"safeguard children from grave risk of harm." Brief for appellant at 14, 16. Susan is correct that "habitual residence" is a term often employed in the Hague Convention. The Hague Convention speaks of wrongful removal or retention in terms of the law of the state in which the child was habitually resident immediately before the removal or retention. The Hague Convention seeks to establish procedures to ensure a child's prompt return to the state of his or her "habitual residence" where removed or retained therefrom. See Hague Convention, preamble. The Hague Convention is applicable to any child "habitually resident" in a contracting state immediately before any breach of custody or access rights. Hague Convention, art. 3*a*. But nowhere does the Hague Convention seek to establish a child's "habitual residence" as a general jurisdictional mandate for custody disputes. To the contrary, as stated in 42 U.S.C. § 11601(b)(4), "The [Hague] Convention and this chapter empower courts in the United States to determine only rights under the [Hague] Convention and not the merits of any underlying child custody claims."

Nor do we find the Hague Convention's commitment to "safeguard children from grave risk of harm" to have any applicability here. The safeguard to which Susan refers is found in article 13 of the Hague Convention, which states, "Notwithstanding the provisions [providing for return of the child], the judicial or administrative authority . . . is not bound to order the return of the child if . . . there is a grave risk that his or her return would expose the child to physical or psychological harm." Essentially, grave risk of harm is an affirmative defense to the return of the child. See, *Cantor v. Cohen*, 442 F.3d 196 (4th Cir. 2006); *Baxter v. Baxter*, 423 F.3d 363 (3rd Cir. 2005). Again, Susan is not a respondent to any action for return of the child under the Hague Convention, and therefore, any grave risk defense is inapplicable. The Hague Convention makes no statement as to the relevancy of grave risk of harm in deciding jurisdiction or the appropriate forum for resolution of custody issues involving a child not wrongfully removed or retained.

Steffany simply does not fall within the purview of the Hague Convention or the ICARA. As such, we do not consider whether any portion of that law preempts the jurisdictional mandates of the UCCJEA. We affirm the district court's conclusion that the

Hague Convention and the ICARA do not impede the court's adherence to the UCCJEA in this case.

### CONSTITUTIONALITY

Susan also asserts that the UCCJEA should not have been followed by the district court because the UCCJEA's jurisdictional provisions are unconstitutional. Susan asserts that the UCCJEA effectively grants "veto power over the exercise of Nebraska jurisdiction" to a foreign country, limiting Nebraska's chancery jurisdiction over the protection of children in a manner that lacks uniformity and provides no mechanism for a parent to challenge the foreign court's decision. Brief for appellant at 20. This, Susan contends, violates article V, §§ 1, 9, and 19, of the Nebraska Constitution and the right of due process found in article I.

### NEB. CONST. ART. V, §§ 1 AND 9

Neb. Const. art. V, § 1, states in relevant part:

> The judicial power of the state shall be vested in a Supreme Court, an appellate court, district courts, county courts, in and for each county, with one or more judges for each county or with one judge for two or more counties, as the Legislature shall provide, and such other courts inferior to the Supreme Court as may be created by law.

Neb. Const. art. V, § 9, states in relevant part: "The district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the Legislature may provide . . . ."

■ Susan points out that these two sections combine to grant chancery (equity) jurisdiction to district courts and that child custody is within the purview of that jurisdiction. See, e.g., *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988); *Schleuter v. McCuiston*, 203 Neb. 101, 277 N.W.2d 667 (1979); *Wassung v. Wassung*, 136 Neb. 440, 286 N.W. 340 (1939). This court has said that the jurisdiction of the district courts conferred by the terms of the Nebraska Constitution, as thus conferred, is beyond the power of the Legislature to limit or control; while the Legislature may grant to the district courts such other jurisdiction as it may deem proper, it cannot limit or take away from such courts their broad and general jurisdiction which the constitution has conferred upon them. See, *K N Energy, Inc. v. City of Scottsbluff*, 233 Neb. 644, 447 N.W.2d 227 (1989); *Miller v. Janecek*, 210 Neb. 316, 314

N.W.2d 250 (1982); *John A. Creighton Home v. Waltman*, 140 Neb. 3, 299 N.W. 261 (1941); *State, ex rel. Wright, v. Barney*, 133 Neb. 676, 276 N.W. 676 (1937); *Lacey v. Zeigler*, 98 Neb. 380, 152 N.W. 792 (1915). Susan argues that by limiting the district court's jurisdiction to modify a child custody order, the UCCJEA has improperly encroached upon the inherent powers granted by the constitution.

The proposition that the Legislature cannot limit or take away the broad and general jurisdiction of the district courts, as conferred by the Nebraska Constitution, has most often been invoked when a legislative enactment has sought to give exclusive, original jurisdiction over a chancery or common-law class of cases to the county courts or to an administrative agency or agent. See, e.g., *Drennen v. Drennen, supra*; *Village of Springfield v. Hevelone*, 195 Neb. 37, 236 N.W.2d 811 (1975); *In re Trust Estate of Myers*, 151 Neb. 255, 37 N.W.2d 228 (1949); *Hoover v. Haller*, 146 Neb. 697, 21 N.W.2d 450 (1946); *Cox v. Johnston*, 139 Neb. 223, 296 N.W. 883 (1941); *Clark v. Lincoln Liberty Life Ins. Co.*, 139 Neb. 65, 296 N.W. 449 (1941); *State, ex rel. Sorensen, v. State Bank of Minatare*, 123 Neb. 109, 242 N.W. 278 (1932); *Lacey v. Zeigler, supra*. The proposition has also been decisive where the Legislature has sought to limit the district court's inherent contempt powers. See *State ex rel. Beck v. Frontier Airlines, Inc.*, 174 Neb. 172, 116 N.W.2d 281 (1962). The proposition has never been applied to find unconstitutional provisions such as those presented in this case.

The term "jurisdiction," as used in Neb. Const. art. V, § 9, denotes the concept of legal power to interpret and administer the law in the premises. *State, ex rel. Wright v. Barney, supra*. We have previously explained that the constitutional grant of jurisdiction to the district court, while original, is not exclusive. *Village of Springfield v. Hevelone, supra*; *In re Estate of Steppuhn*, 221 Neb. 329, 377 N.W.2d 83 (1985). In *In re Estate of Steppuhn, supra*, we considered whether a statutory provision granting to county courts subject matter jurisdiction over probate matters involving chancery or common law was unconstitutional. We explained that both the district court and the county court could possess the same original jurisdiction, although they could not both exercise exclusive jurisdiction. We concluded: "In considering the difference

between exclusive and original, the apparent conflict between the jurisdiction of the county court and the district court vanishes." *Id.* at 332, 377 N.W.2d at 85.

Our common-law jurisprudence recognized the "fundamental" proposition that "where courts have concurrent jurisdiction, the first to assume jurisdiction retains it to the exclusion of the other." *McFarland v. State,* 172 Neb. 251, 256, 109 N.W.2d 397, 401-02 (1961). See, also, *State, ex rel. Sorensen, v. Mitchell Irrigation District,* 129 Neb. 586, 262 N.W. 543 (1935); *Fitzgerald v. Fitzgerald & Mallory Construction Co.,* 44 Neb. 463, 62 N.W. 899 (1895). Sections 43-1230 and 43-1240 do not deprive the district court of its broad and general original jurisdiction over child custody. Rather, they simply codify rules related to the exercise of that jurisdiction where there is concurrent jurisdiction with another court. We accordingly find no merit to Susan's argument that these provisions violate §§ 1 and 9 of the Nebraska Constitution.

## NEB. CONST. ART. V, § 19

Susan next argues that leaving our court's power to modify contingent upon a foreign court's decision whether to cede jurisdiction violates the mandate of Neb. Const. art. V, § 19. Section 19 provides that all courts of the same class or grade in this state be uniform. In *State v. Magney,* 52 Neb. 508, 72 N.W. 1006 (1897), we explained that the mandate of article V, § 19, is that the jurisdiction and powers conferred upon a justice, county, or district court of one county can be neither more nor less than given the court of the same class in any other county.

We conclude that because the UCCJEA is uniformly applicable to all district courts of the same class, there is no violation of Neb. Const. art. V, § 19. Such uniformity is not changed by the fact that the UCCJEA (uniformly) disallows those courts from modifying another jurisdiction's original custody order absent certain circumstances. This is so even where one of those circumstances is the exercise of the foreign court's discretion. The fact that the exercise of discretion will not be strictly homogeneous does create a lack of uniformity in the constitutional sense. See *State v. Lotter,* 255 Neb. 456, 586 N.W.2d 591 (1998) (rejecting argument that discretion with sentencing judge violated Neb. Const. art. V, § 19). Regardless of the ability to ensure uniformity

among courts of foreign nations in their deliberative process to determine whether to cede jurisdiction, the courts of this state are uniform in their powers upon such deliberation. Susan's contention that the UCCJEA violates article V, § 19, of the Nebraska Constitution is likewise without merit.

### NEB. CONST. ART. I, § 3

Finally, Susan asserts that her rights of due process and equal protection under Neb. Const. art. I, § 3, are violated by the UCCJEA because "there is no mechanism for a parent such as Susan . . . to be heard in order to challenge the refusal of the foreign court to give its blessing and approval to the district court's exercise of the jurisdiction." Brief for appellant at 22. Section 43-1230(c) provides that "[a] court of this state need not apply the act if the child custody law of a foreign country violates fundamental principles of human rights."

■ To protect Susan's due process rights, due process need not take place in Nebraska. Susan makes no claim that the Canadian courts have failed to afford her due process. Certainly, there is not an innate due process violation due to the fact that a Canadian appellate court would be reviewing a lower court's decision from its own country. We find no violation of Susan's rights under Neb. Const. art. I in the district court's application of the UCCJEA in this case.

### CONCLUSION

We affirm the district court's conclusion that pursuant to §§ 43-1239 and 43-1240, the Canadian courts have exclusive continuing jurisdiction over child custody determinations concerning Steffany and that it could not "assume jurisdiction" to modify the Canadian orders.

AFFIRMED.