Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

- 807 -

**Nebraska Supreme Court Advance Sheets
316 Nebraska Reports**
IN RE CHANGE OF NAME OF DRUCKENMILLER
Cite as 316 Neb. 807

**In re Change of Name of Druckenmiller.
J.D., a minor, by and through his mother and next
friend, Carmen Druckenmiller, appellant,
v. Garth Druckenmiller, appellee.**

**S.D., a minor, by and through his mother and next
friend, Carmen Druckenmiller, appellant,
v. Garth Druckenmiller, appellee.**

___ N.W.3d ___

Filed June 7, 2024.    Nos. S-23-340, S-23-341.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.
2. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
3. **Jurisdiction: Appeal and Error.** It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
4. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
5. **Jurisdiction: Minors: Names.** Under the plain language of Neb. Rev. Stat. §§ 25-21,270 to 25-21,273 (Reissue 2016 & Cum. Supp. 2022), a district court, exercising jurisdiction in a name change case, has no power to decide whether a minor child's birth date should be changed.
6. **Constitutional Law: Jurisdiction: Equity.** Article V, § 9, of the Nebraska Constitution confers equity jurisdiction upon the district courts.
7. **Jurisdiction: Equity.** If a court of equity has properly acquired jurisdiction of a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation.

8. **Actions: Equity: Jurisdiction.** An action in equity must be founded on some recognized source of equity jurisdiction.
9. **Equity.** In dealing with legal rights, a court of equity adopts and follows the rules of law in all cases to which those rules are applicable, and whenever there is an explicit statute or a direct rule of law governing the case in all its circumstances, a court of equity is as much bound by it as would be a court of law.
10. **Constitutional Law: Statutes: Equity.** A court's equitable powers cannot be used to provide relief that is contrary to statutory or constitutional requirements, and courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.
11. **Statutes: Equity.** A court acting in equity may not provide for nonlegal, equitable remedies to avoid unduly harsh application of a statute.
12. **Jurisdiction: Appeal and Error.** When a trial court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

Appeals from the District Court for Burt County: JOHN E. SAMSON, Judge. Affirmed.

John P. Farrell, of The Law Offices of John P. Farrell, L.L.C., for appellant.

No appearance by appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## INTRODUCTION

In these name change proceedings, a district court granted the name change requests of two minor children but found that it lacked jurisdiction to change the "arbitrarily chosen" birth dates listed on the children's foreign adoption certificates. The adoptive mother appeals on behalf of both children. We conclude that there is no explicit statutory authority or recognized source of equity jurisdiction allowing a district court to change a minor child's birth date in a name change proceeding. Therefore, we affirm the district court's decrees.

## BACKGROUND

### Petitions

Carmen Druckenmiller filed two petitions—both labeled "Verified Petition for Name Change"—in the district court for Burt County, Nebraska, on behalf of her adoptive minor children, J.D. and S.D. The petitions were filed under separate district court case numbers. They set forth two general requests for relief.

First, the petition for each child sought to change his legal name in order to "correct the error made at the time of [the] minor child's birth in completing the required paperwork to name the minor child." Because we focus solely on the second request for relief, we mention the first one only to note that it was made.

Second, the petition for each child sought to change his birth date to "a year younger" in order to "reflect the correct date of birth for legal and educational purposes." The petitions set forth the following allegations: The children were born in a rural area in Ethiopia without "official" birth certificates; an incorrect birth date was "arbitrarily chosen" for each child's "adoption certificate"; and at the time of the adoptions, a bone scan was done, stating that each child's "correct birthdate was a year younger than stated on the adoption certificate"—in other words, the children were a year younger than their adoption certificates indicated. Finally, the petitions alleged that a current bone scan of each child "confirm[ed] the [minor child's] birthdate as a year younger than on his certificate of citizenship."

The petitions did not specify the "correct" or "incorrect" birth dates, and the records presented do not contain the "adoption certificate[s]" or "certificate[s] of citizenship." We understand the references to these certificates to refer to the children's foreign adoption certificates and their certificates of citizenship issued by the federal government. It appears that the birth dates were provided in a "Confidential Party

Information Form," which is not included in the appellate records.

We note that the records show no indication the adoptive father participated in the proceedings below, and he is not participating in the appeals.

## Hearing

The district court held a joint hearing on both petitions, during which it heard testimony from Druckenmiller and both children. At that time, the children were purported to be 16 years old (J.D.) and 15 years old (S.D.). The court also received exhibits pertaining to the children's ages.

From the bill of exceptions, we learn that Druckenmiller and the adoptive father were formerly married and that they adopted the children in Ethiopia in 2011. The children's names were designated by the adoption agency, and because their birth dates were unknown, the adoption agency "just kind of picked birth dates to put on a birth certificate." The couple had apparently agreed to give the children different names and to "readopt" them in the United States in order to change their birth dates, but the readoption did not occur before the couple divorced.

Druckenmiller's testimony suggested that readoption was no longer an option unless the adoptive father "gives up all parental rights, which neither of us want." However, she believed that she could work with "Vital Records" in order to make the desired changes after obtaining a court order. Given the context, we understand "Vital Records" to mean the Nebraska Department of Health and Human Services (DHHS), the agency that handles the registration and certification of vital events in Nebraska.[1] We note that the records do not contain any documentation sent to or from DHHS, and DHHS was not a party in the cases.

---

[1] See, generally, Neb. Rev. Stat. §§ 71-601 to 71-649 (Reissue 2018 & Cum. Supp. 2022) (vital statistics statutes).

At the close of the evidence, the court granted the name change requests for both children and took the requests to change their birth dates under advisement. The court gave Druckenmiller's counsel an opportunity to submit briefing on "any legal authority which allows a [d]istrict [c]ourt on a name change application to have the jurisdiction to change a minor child's date of birth." The records suggest that counsel submitted a letter to the court to that effect.

### District Court's Decrees

The district court entered two decrees—one regarding J.D. and the other regarding S.D.—in which it granted the name change requests for both children but denied the requests to change the "incorrect" birth dates. In refusing to change the birth dates, the court reasoned, in full, in both decrees:

(a) The Court does not have jurisdiction to render such an Order; and,

(b) If the Court had jurisdiction, the Court finds that [Druckenmiller] did not meet her burden of proof to establish: (i) That it is in the best interest of the minor child for "legal reasons" to change the birth date, especially when considering [Druckenmiller] could not establish the exact birth date of the minor child, nor did she articulate "legal" reasons that were detrimental to the minor child; and (ii) That it is in the best interest of the minor for "educational purposes", as [Druckenmiller] could not articulate the detrimental [e]ffect the minor child's birth date has on his educational opportunities.

Druckenmiller filed timely appeals on the children's behalf, which we moved to our docket.[2] The appeals were consolidated for purposes of oral argument and disposition.

For simplicity, we will refer to the appealing parties collectively as "Druckenmiller" from here on.

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

## ASSIGNMENTS OF ERROR

Druckenmiller assigns, consolidated and restated, that the district court erred in (1) finding it lacked jurisdiction to "correct" the children's birth dates and (2) determining that changing the birth dates was not in the children's best interests. We need not address both assignments because our decision on Druckenmiller's first claim resolves the appeal.

## STANDARD OF REVIEW

[1,2] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.[3] An appellate court independently reviews questions of law decided by a lower court.[4]

## ANALYSIS

[3] These cases present the question whether a district court, in a name change proceeding, has the power to change an adoptive child's birth date in a situation where the child was given an "arbitrarily chosen" birth date on a foreign adoption certificate, which in turn was reflected on a federal certificate of citizenship. The district court found that it lacked jurisdiction to do so. Druckenmiller contends otherwise. It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[5]

### NO STATUTORY AUTHORITY

The district court concluded—and Druckenmiller concedes—there was no explicit statutory authority to change the children's birth dates in the name change proceedings. We agree.

---

[3] *A & P II v. Lancaster Cty. Bd. of Equal., ante* p. 216, 3 N.W.3d 907 (2024).

[4] *Clason v. LOL Investments, ante* p. 91, 3 N.W.3d 94 (2024).

[5] *First Tennessee Bank Nat. Assn. v. Newham*, 290 Neb. 273, 859 N.W.2d 569 (2015).

The general grant of jurisdiction in Neb. Rev. Stat. § 24-302 (Reissue 2016) provides that "[t]he district courts shall have and exercise general, original and appellate jurisdiction in all matters, both civil and criminal, except where otherwise provided." The Legislature has provided a number of specific statutory grants of jurisdiction, including jurisdiction in name change proceedings.[6] But there is no explicit statutory authority to change a minor child's birth date under the name change statutes.[7]

[4,5] In the absence of anything to the contrary, we adhere to the principle that statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[8] We hold that under the plain language of §§ 25-21,270 to 25-21,273, a district court, exercising jurisdiction in a name change case, has no power to decide whether a minor child's birth date should be changed.

For completeness, we note that another statutory scheme may be relevant, though it does not apply here. Druckenmiller seems to believe that "Vital Records"—which we understand to refer to DHHS—has the authority to make the requested birth date changes with a "court order." This may be an oversimplification.

Nebraska's vital statistics statutes[9]—which govern the registration, reporting, and certification of vital events in Nebraska—cannot be read to grant any authority to amend foreign adoption certificates or federal certificates of citizenship. But those statutes do set forth a procedure for obtaining

---

[6] See Neb. Rev. Stat. §§ 25-21,270 to 25-21,273 (Reissue 2016 & Cum. Supp. 2022).

[7] See *id.*

[8] *Saint James Apt. Partners v. Universal Surety Co., ante* p. 419, 5 N.W.3d 179 (2024).

[9] See §§ 71-601 to 71-649.

an adoptive birth certificate in this situation, which requires first obtaining an adoption decree in a Nebraska court.[10] Because the county courts have exclusive original jurisdiction over adoption proceedings,[11] only those courts would have the authority to enter a decree used to obtain an adoptive birth certificate. We express no opinion regarding the merits of any attempt by Druckenmiller to comply with that procedure.

## Purported Constitutional Authority

In the absence of any explicit statutory authority, Druckenmiller relies upon Neb. Const. art. V, § 9, in arguing that the district court had the authority to change the children's birth dates in the name change proceedings. We disagree.

[6,7] Article V, § 9, of the Nebraska Constitution states that "[t]he district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the Legislature may provide . . . ." We have said that article V, § 9, of the Nebraska Constitution confers equity jurisdiction upon the district courts.[12] If a court of equity has properly acquired jurisdiction of a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation.[13]

[8] Here, Druckenmiller broadly contends that the instant cases are "in equity," without pointing to a recognized source of equity jurisdiction. It is well settled that an action in equity must be founded on some recognized source of equity jurisdiction.[14] A few examples include civil actions for injunctive

---

[10] See §§ 71-626 and 71-627.02.

[11] See Neb. Rev. Stat. § 24-517(11) (Cum. Supp. 2022).

[12] *Charleen J. v. Blake O.*, 289 Neb. 454, 855 N.W.2d 587 (2014).

[13] *Schmid v. Simmons*, 311 Neb. 48, 970 N.W.2d 735 (2022).

[14] *In re Guardianship & Conservatorship of Maronica B.*, 314 Neb. 597, 992 N.W.2d 457 (2023).

relief[15] or for partition,[16] proceedings for the supervision of the administration of trusts,[17] divorce cases,[18] and issues of child custody.[19] Because the instant cases did not implicate a recognized source of equity jurisdiction, we reject Druckenmiller's argument that the Nebraska Constitution granted the district court the authority to change the children's birth dates in the name change proceedings.

[9] We also reject the notion that a court of equity may provide relief in a purely statutory proceeding beyond that provided or necessarily implied in the statute.[20] We have said that in dealing with legal rights, a court of equity adopts and follows the rules of law in all cases to which those rules are applicable, and whenever there is an explicit statute or a direct rule of law governing the case in all its circumstances, a court of equity is as much bound by it as would be a court of law.[21]

[10,11] Stated differently, a court's equitable powers cannot be used to provide relief that is contrary to statutory or constitutional requirements,[22] and "[c]ourts of equity can no more

---

[15] See, *Omaha Fish and Wildlife Club, Inc. v. Community Refuse, Inc.*, 208 Neb. 110, 302 N.W.2d 379 (1981); *Village of Springfield v. Hevelone*, 195 Neb. 37, 236 N.W.2d 811 (1975).

[16] See *In re Estate of Kentopp. Kentopp v. Kentopp*, 206 Neb. 776, 295 N.W.2d 275 (1980).

[17] See, *In re Trust Estate of Myers*, 151 Neb. 255, 37 N.W.2d 228 (1949); *Burnham v. Bennison*, 121 Neb. 291, 236 N.W. 745 (1931); *Matteson v. Creighton University*, 105 Neb. 219, 179 N.W. 1009 (1920).

[18] See, *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988); *Wassung v. Wassung*, 136 Neb. 440, 286 N.W. 340 (1939).

[19] See, *Benjamin M. v. Jeri S.*, 307 Neb. 733, 950 N.W.2d 381 (2020); *Charleen J. v. Blake O., supra* note 12; *Susan L. v. Steven L.*, 273 Neb. 24, 729 N.W.2d 35 (2007).

[20] See 30A C.J.S. *Equity* § 4 (2019).

[21] *Guy Dean's Lake Shore Marina v. Ramey*, 246 Neb. 258, 518 N.W.2d 129 (1994).

[22] See *Foster v. Com'r of Correction*, 484 Mass. 1059, 146 N.E.3d 408 (2020).

disregard statutory and constitutional requirements and provisions than can courts of law."[23] A court acting in equity may not provide for nonlegal, equitable remedies to avoid unduly harsh application of a statute.[24]

[12] In these appeals, we conclude that the district court lacked jurisdiction over the birth date issue in the name change proceedings. Our disposition does not permit us to reach the merits of the birth date change requests. When a trial court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[25] We express no opinion regarding any other avenues of relief that might be available.

## CONCLUSION

For the foregoing reasons, we cannot conclude that the district court had the authority to decide the birth date change requests in these name change proceedings. We affirm the district court's decrees.

Affirmed.

---

[23] *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327-28, 135 S. Ct. 1378, 191 L. Ed. 2d 471 (2015) (internal quotation marks omitted).

[24] See *Stokes v. Millen Roofing Co.*, 466 Mich. 660, 649 N.W.2d 371 (2002).

[25] *State ex rel. Malone v. Baldonado-Bellamy*, 307 Neb. 549, 950 N.W.2d 81 (2020).