Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/24/2016 09:09 AM CDT

JESSE B., INDIVIDUALLY AND AS GUARDIAN AND NEXT FRIEND
OF JAELYN B., A MINOR CHILD, APPELLANT, V. TYLEE H.
AND DOUGLAS J. PETERSON, ATTORNEY GENERAL
OF THE STATE OF NEBRASKA, APPELLEES.

___ N.W.2d ___

Filed June 24, 2016.    No. S-15-870.

1. **Actions: Judicial Notice.** A court may judicially notice adjudicative facts, which are not subject to reasonable dispute, at any stage of the proceeding.
2. **Actions: Judicial Notice: Appeal and Error.** In interwoven and inter-dependent cases, an appellate court may examine its own records and take judicial notice of the proceedings.
3. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
4. **Statutes.** The meaning and interpretation of a statute present questions of law.
5. **Constitutional Law: Statutes.** The constitutionality of a statute is a question of law.
6. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
7. **Jurisdiction: Appeal and Error.** Before deciding the merits of an appeal, an appellate court must determine if it has jurisdiction.
8. ____: ____. If the court from which a party takes an appeal lacks jurisdiction, then the appellate court acquires no jurisdiction.
9. ____: ____. An appellate court has the power to determine whether it has jurisdiction over an appeal and to correct jurisdictional issues even if it does not have jurisdiction to reach the merits.
10. **Habeas Corpus: Parental Rights: Child Custody.** Habeas corpus is an appropriate proceeding to test the legality of custody and best interests of a minor, including the rights of fathers of children born out of wedlock.

11. **Constitutional Law: Habeas Corpus: Child Custody.** Habeas corpus is a civil remedy constitutionally available in a proceeding to challenge and test the legality of a person's detention, imprisonment, or custodial deprivation of the person's liberty. It is an appropriate proceeding to test the legality of custody and best interests of a minor, when the party having physical custody of the minor has not acquired custody under a court order or decree.

12. **Habeas Corpus: Jurisdiction.** Because the privilege of the writ of habeas corpus is part of Nebraska's organic law, district courts have general jurisdiction over these proceedings.

13. **Courts: Jurisdiction: Child Custody.** District courts have inherent equity jurisdiction to resolve custody disputes.

14. **Constitutional Law: Legislature: Courts: Jurisdiction.** The Legislature cannot limit or take away the broad and general jurisdiction of the district courts, as conferred by the Nebraska Constitution. But it can give county courts concurrent original jurisdiction over the same subject matter.

15. **Courts: Adoption.** A parent can challenge the legality of an adoption by objecting to the proceeding in county court.

16. **Legislature: Courts: Jurisdiction: Adoption: Habeas Corpus.** Despite the Legislature's grant of exclusive jurisdiction over adoption matters to county or juvenile courts, when a parent claims his or her child is being illegally detained for an adoption, a district court has original overlapping jurisdiction over the matter in a habeas proceeding.

17. **Courts: Jurisdiction.** Where courts have concurrent jurisdiction, the first to assume jurisdiction retains it to the exclusion of the other.

18. **Courts: Jurisdiction: Child Custody: Habeas Corpus.** When a district court acquires jurisdiction over a habeas proceeding involving the permanent custody of a child, no other court can acquire jurisdiction over the matter until after the first court's order is carried out.

19. **Actions: Courts: Jurisdiction.** Where an action is pending in two courts, the court first acquiring jurisdiction will hold jurisdiction to the exclusion of the other.

20. **Actions: Standing: Time.** A court determines standing as it existed when a plaintiff commenced an action.

21. **Paternity: Child Custody: Time.** A paternity acknowledgment in Nebraska operates as a legal finding of paternity after the 60-day rescission period has expired. At that point, the acknowledged father is the child's legal father—not a presumed father. And he has the same right to seek custody as the child's biological mother, even if genetic testing shows he is not the biological father.

22. **Parental Rights: Public Policy: States: Appeal and Error.** It is not contrary to Nebraska's public policy to recognize an acknowledged

father's parental rights under another state's statutes when the Nebraska Supreme Court has recognized an acknowledged father's parental rights under Nebraska's statutes.

23. **Constitutional Law: Foreign Judgments: Jurisdiction: States.** The Full Faith and Credit Clause requires states to give the same effect to a judgment in the forum state that it has in the state where the court rendered the judgment.

24. **Constitutional Law: Foreign Judgments: States: Paternity: Adoption: Parental Rights.** Neb. Rev. Stat. § 43-1406(1) (Reissue 2008) extends the constitutional requirement of giving full faith and credit to a sister state's paternity determination through a voluntary acknowledgment. So whether a paternity acknowledgment made in a sister state requires a legal father's consent to an adoption depends upon whether the laws of the sister state confer that right.

25. **Adoption: Parent and Child.** Adoption terminates the parent-child relationship.

26. **Courts: Jurisdiction: Adoption: Parental Rights.** To terminate a father's rights through an adoption procedure, the consent of the adjudicated father of a child born out of wedlock is required for the adoption to proceed unless the Nebraska court having jurisdiction over the custody of the child determines otherwise, pursuant to Neb. Rev. Stat. § 43-104.22 (Reissue 2008).

27. **Adoption: States: Statutes.** Neb. Rev. Stat. § 43-104.22(11) (Reissue 2008) does not apply to an acknowledged father with the right to consent to an adoption under the laws of a sister state.

28. **Judgments: Collateral Attack: Jurisdiction.** For judgments, collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter. Only a void judgment is subject to collateral attack.

29. **Judgments: Collateral Attack: Paternity.** The collateral attack rules that apply to judgments also apply to a voluntary paternity acknowledgement that has the same effect as a judgment.

30. **Adoption.** In a private adoption, the child is relinquished directly into the hands of the prospective adoptive parent or parents without interference by the state or a private agency.

31. **Parental Rights.** A valid relinquishment of parental rights is irrevocable, and a natural parent who relinquishes his or her rights to a child by a valid written instrument gives up all rights to the child at the time of the relinquishment.

32. **Parental Rights: Adoption: Appeal and Error.** A natural parent's knowing, intelligent, and voluntary relinquishment of a child for adoption is valid. An appellate court will generally uphold relinquishments absent evidence of threats, coercion, fraud, or duress.

33. **Parental Rights: Adoption.** Under Neb. Rev. Stat. § 43-111 (Reissue 2008), it is the adoption itself which terminates the parental rights, and until the adoption is granted, the parental rights are not terminated. When a parent's relinquishment of his or her child is invalid or void, § 43-111 governs when the parent's rights are terminated.

34. **Parental Rights: Adoption: Child Custody: Habeas Corpus.** A parent's fundamental rights apply in a habeas corpus proceeding to regain custody of his or her child who is the subject of an adoption proceeding if the parent's relinquishment is invalid or void.

35. **Constitutional Law: Parent and Child.** The best interests standard is subject to the overriding recognition that the relationship between parent and child is constitutionally protected.

36. **Child Custody: Parental Rights.** A parent's superior right to custody over a stranger to the parent-child relationship protects both the parent's and the child's fundamental interest in maintaining it.

37. **Constitutional Law: Due Process: Parent and Child.** The Due Process Clause precludes the State from breaking apart a family over a parent's objections absent a powerful countervailing interest.

38. **Parental Rights: Adoption: Child Custody: Habeas Corpus.** The parental preference doctrine applies in a habeas proceeding to obtain custody of a child. A court in a habeas proceeding may not deprive a parent of custody of his or her minor child unless a party affirmatively shows that the parent is unfit or has forfeited the right to perform his or her parental duties. This reasoning applies to a habeas proceeding challenging an adoption when a parent's parental rights remain intact because a court determines that the relinquishment is invalid or is void.

Appeal from the District Court for Lancaster County: JODI NELSON, Judge. Reversed and remanded for further proceedings.

George T. Babcock, of Laws Offices of Evelyn N. Babcock, and Jennifer Gaughan, of Legal Aid of Nebraska, for appellant.

Shawn D. Renner and Susan K. Sapp, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee Tylee H.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, and CASSEL, JJ., and PIRTLE and RIEDMANN, Judges.

Connolly, J.

## I. SUMMARY

This appeal is the companion case to *In re Adoption of Jaelyn B*.[1] In both cases, the appellant, Jesse B., claimed that his child, Jaelyn B., could not be adopted without his consent because he was her legal father. In this appeal, he specifically challenged in the district court the constitutionality of several Nebraska adoption statutes,[2] including statutes that permitted Jaelyn's adoption without his consent. And he claimed that Nebraska must give full faith and credit to Ohio's paternity determination. The district court postponed deciding his claims until after the county court had issued an adoption decree. Afterward, it concluded that it did not have jurisdiction to grant habeas relief. It determined that Jesse lost standing to challenge Jaelyn's adoption after the county court found that he was not her biological father.

We reverse. Without addressing Jesse's constitutional challenges, we conclude that under Neb. Rev. Stat. 43-1406(1) (Reissue 2008), the district court erred in failing to determine that Nebraska had to give full faith and credit to Ohio's determination of Jesse's paternity. Under Ohio law, Jesse has the right to withhold consent to the adoption of Jaelyn. So, the district court erred in failing to determine that the county court could not order an adoption when Jesse had not consented. We reverse the judgment and remand the cause with instructions for further proceedings on issues relevant to Jaelyn's custody.

## II. BACKGROUND

[1,2] The facts and procedural history of this appeal are fully set out in *In re Adoption of Jaelyn B*. We summarize them here. In doing so, we apply two judicial notice principles. A court

---

[1] *In re Adoption of Jaelyn B., ante* p. 917, ___ N.W.2d ___ (2016).

[2] See, generally, Neb. Rev. Stat. §§ 43-104 to 43-104.25 (Reissue 2008 & Cum. Supp. 2014).

may judicially notice adjudicative facts, which are not subject to reasonable dispute, at any stage of the proceeding.[3] In interwoven and interdependent cases, we may examine our own records and take judicial notice of the proceedings.[4]

In April 2013, Jaelyn was born in Ohio. The next day, the mother, Heather K., and Jesse signed in the presence of a notary an "Acknowledgment of Paternity Affidavit." They affirmed that Jesse was Jaelyn's father. A notice on the form explained that its purpose "is to acknowledge the legal existence of a father and child relationship through voluntary paternity establishment." The notice explained that Ohio statutes limited the signatories' right to rescind an acknowledgment. The signatories could seek an administrative rescission within 60 days. They could also seek a judicial rescission on limited grounds, but only after the 60-day period and within 1 year of the acknowledgment's becoming final under specified Ohio statutes. Alternatively, a potential signatory could ask for genetic testing at no charge. On June 3, Ohio's office of vital statistics recorded Heather and Jesse as Jaelyn's mother and father on her birth certificate.

In January 2014, Jesse received adoption paperwork from Heather's Nebraska attorney, Kelly Tollefsen. The letter stated that Heather had identified Jesse as a possible biological father and that Heather intended to relinquish Jaelyn for an adoption. It informed him that if he intended to claim paternity and seek custody, he should obtain his own attorney, or he could sign the enclosed forms for relinquishing Jaelyn and consenting to her adoption. Jesse could not afford an attorney and did not obtain legal assistance in Nebraska until later that spring.

In June 2014, Jesse filed a complaint in Lancaster County District Court for a writ of habeas corpus and a declaratory

---

[3] *Bauermeister Deaver Ecol. v. Waste Mgmt. Co.*, 290 Neb. 899, 863 N.W.2d 131 (2015).

[4] *Id.*

judgment. On July 22, Jesse filed a complaint for custody in the Ohio Court of Common Pleas. Eight days later, on July 30, Jesse filed an objection to Jaelyn's adoption and requested notice of any adoption proceeding for Jaelyn in Douglas County Court. Later, in August 2014, Tylee H., the prospective adoptive parent, filed a petition to adopt Jaelyn in Douglas County Court.

## 1. Jesse's Complaint

Jesse filed an amended complaint in September 2014 after he discovered that the prospective adoptive parent was Tylee. The named respondents were John Doe, a possible unknown adoptive parent; Tollefsen; Tylee; and Tylee's attorney. He also named the Attorney General as a respondent because he challenged the constitutionality of Nebraska statutes.[5] Jesse alleged that Tollefsen would not disclose where the adoption proceeding would be filed, but that she did disclose the name of the attorney representing Tylee. Tylee's attorney also would not disclose where the adoption proceeding would be filed.

Jesse asked the district court to declare the following statutes unconstitutional because they violated his constitutional due process and equal protection rights: Sections 43-104, 43,104.01 to 43-104.05, 43-104.12, 43-104.13, 43-104.17, 43-104.22, and 43.104.25. Jesse asserted 11 claims, which we condense to four sets of allegations regarding his statutory and constitutional claims.

First, Jesse alleged that under Ohio law, an acknowledgment of paternity is a legal finding of paternity, and that neither he nor Heather had rescinded the acknowledgment. He claimed that the U.S. Constitution and § 43-1406 required Nebraska to give full faith and credit to Ohio's paternity determination.

Second, Jesse claimed that he was Jaelyn's legal father under Nebraska law. He asserted that under the law of both

---

[5] See Neb. Rev. Stat. § 25-21,159 (Reissue 2008).

states, the respondents—Heather, Tylee, and their separate attorneys—had unlawfully restrained Jaelyn of her liberty and kept her from her rightful custodian.

Third, Jesse claimed that he had an established familial relationship with Jaelyn that was constitutionally protected. He alleged that the respondents knew or should have known of this relationship and that the notice he received for a putative father was insufficient and violated his substantive and procedural due process rights.

Fourth, Jesse alleged two equal protection claims resting on marital status and gender: (1) The notice and protections he would have received if he were married were inferior to those he received as an unmarried legal father; and (2) the notice that he received was inferior to the notice that is required for a legal mother.

## 2. Court Postpones Deciding Jesse's Claims at Tylee's Request

In September 2014, the district court issued a writ of habeas corpus that ordered the respondents to bring Jaelyn to court and respond to these allegations. The respondents moved to dismiss the complaint for lack of subject matter jurisdiction. In October, at Jesse's request, the court dismissed John Doe and the attorneys as respondents. The respondents had also moved to continue the hearing on their motion to dismiss Jesse's complaint until after the county court decided whether to allow an adoption. They alleged that a continuance would promote judicial efficiency and save them costs. They also alleged that genetic testing had shown that another man, Tyler T., was Jaelyn's biological father and that Tyler had waived his parental rights.

At an October 2014 hearing on the respondents' motions to dismiss or postpone the proceedings, Tylee contended that the district court lacked subject matter jurisdiction over Jesse's habeas proceeding. She argued that Jesse could have commenced a proceeding under § 43-104.05 and alleged that he

was excused from the filing time limits and entitled to have the court determine whether his consent was required under § 43-104.22. But she argued that even if he had done that, his consent to an adoption was not required under § 43-104.22 because he was not Jaelyn's biological father.

Jesse responded that the putative father statutes did not apply to him and that the father of a child born in another state cannot comply with those statutes. He argued that a habeas proceeding was the correct procedure to challenge Jaelyn's unlawful detention and that Nebraska's adoption statutes were unconstitutional facially and as applied to him. He argued that Tylee had no standing to challenge his legal status as Jaelyn's father. He asked for visitation pending the court's determination. The court took the motions under advisement. The record does not contain a ruling on the respondents' continuance motion, but the court did not issue a judgment until almost a year later.

In February 2015, 4 months after the hearing on Tylee's motion to dismiss or continue the proceedings, the court sustained Tylee's motion to present new evidence. That hearing occurred in April. Tylee submitted three documents from the adoption proceeding in county court: (1) genetic testing results showing that Tyler was Jaelyn's biological father; (2) the county court's order denying Jesse's motion to intervene under § 43-104.22 because he was not Jaelyn's biological father; and (3) the county court's January 2015 adoption decree. Jesse argued that those exhibits were irrelevant to whether the court had jurisdiction over his habeas proceeding. He submitted evidence of his paternity acknowledgment, Jaelyn's birth certificate, and an order from the Ohio Court of Common Pleas showing that he had a custody case pending there since July 2014.

In September 2015, the district court entered its judgment. It concluded that it had jurisdiction over Jesse's complaint. But it nonetheless determined that it did not have

jurisdiction to grant habeas relief. It reasoned that under Neb. Rev. Stat. § 43-102 (Reissue 2008), a county court has jurisdiction over adoption proceedings, and that the county court had already found that Jesse was not Jaelyn's biological father. Because the county court had already decreed a legal adoption, the district court concluded that it could not exercise jurisdiction:

[Jesse] is in essence asking this court to nullify the Douglas County Court's order finding that another man is the biological father of [Jaelyn] and then find that [Jesse's] signing of an acknowledgment of paternity trumps the scientific evidence received by another court. Said another way, [Jesse] is asking this court to find that he is the father of [Jaelyn] when the evidence shows he is not. Under the circumstances of this case, this court finds it does not have jurisdiction to do so.

. . . Because there is a legal adoption that has been decreed by a court of competent jurisdiction, this court cannot find that there has been an illegal detention of [Jaelyn] by [Tylee].

Likewise, the court concluded that the county court's order deprived Jesse of standing to challenge the constitutionality of Nebraska's adoption statutes:

[Jesse's] standing to complain about the adoption statutes must derive from him being situated as [Jaelyn's] father. That issue was decided by the Douglas County Court based upon the uncontested genetic testing results. . . .

Because he has been determined not to be the father of [Jaelyn], the core that is necessary for him to proceed on his declaratory judgment action, i.e. standing, does not exist.

The court ruled that Jesse could not make curative amendments to his complaint and dismissed it.

## III. ASSIGNMENTS OF ERROR

Jesse assigns, restated, that the court erred as follows:

(1) in concluding that Jesse lacked standing to challenge the Nebraska's adoption statutes;

(2) in concluding that the court lacked subject matter jurisdiction over his complaint for a writ of habeas corpus and a declaratory judgment; and

(3) in concluding that the Douglas County Court had jurisdiction over the adoption proceedings.

## IV. STANDARD OF REVIEW

[3-6] A jurisdictional issue that does not involve a factual dispute presents a question of law.[6] The meaning and interpretation of a statute present questions of law.[7] The constitutionality of a statute is a question of law.[8] And when reviewing questions of law, we resolve the questions independently of the lower court's conclusions.[9]

## V. ANALYSIS

[7-9] Before deciding the merits of an appeal, an appellate court must determine if it has jurisdiction.[10] If the court from which a party takes an appeal lacks jurisdiction, then the appellate court acquires no jurisdiction.[11] But we have the power to determine whether we have jurisdiction over an appeal and to correct jurisdictional issues even if we do not have jurisdiction to reach the merits.[12]

---

[6] *Pearce v. Mutual of Omaha Ins. Co., ante* p. 277, 876 N.W.2d 899 (2016).

[7] See *Adair Asset Mgmt. v. Terry's Legacy, ante* p. 32, 875 N.W.2d 421 (2016).

[8] See *Bryan M. v. Anne B.*, 292 Neb. 725, 874 N.W.2d 824 (2016).

[9] *Pearce, supra* note 6.

[10] See *In re Interest of Jackson E., ante* p. 84, 875 N.W.2d 863 (2016).

[11] *Shasta Linen Supply v. Applied Underwriters*, 290 Neb. 640, 861 N.W.2d 425 (2015).

[12] See *id.*

1. DISTRICT COURT INCORRECTLY DETERMINED
THAT IT LACKED JURISDICTION OVER
JESSE'S HABEAS PROCEEDING

(a) Parties' Contentions

The court determined that it lacked subject matter jurisdiction to issue a writ of habeas corpus because the county court had already found that Jesse was not Jaelyn's biological father and had decreed an adoption. Jesse contends that our case law conclusively shows that he had standing to seek a writ of habeas corpus when he filed his complaint and that he filed his complaint before Tylee filed an adoption petition in county court. He contends that the district court delayed deciding the issues raised by his complaint until after the county court decreed an adoption and then relied on that decree to conclude that it lacked jurisdiction to grant relief. He contends that the court's action violated the doctrine of jurisdictional priority and the purpose for allowing a habeas proceeding to challenge an adoption. Similarly, Jesse contends that he had standing to seek a declaratory judgment when he commenced his action and that the county court's orders did not defeat his claim that he had a legal right to custody of Jaelyn.

Tylee argues that under Neb. Rev. Stat. § 24-517(11) (Cum. Supp. 2012), county courts have "[e]xclusive original jurisdiction in matters of adoption, except if a separate juvenile court already has jurisdiction over the child to be adopted, concurrent original jurisdiction with the separate juvenile court." We note that the Legislature first conferred this exclusive jurisdiction on county courts in 1973.[13] Since 1998, however, a county court has concurrent original jurisdiction with a separate juvenile court if the juvenile court already has jurisdiction over the child to be adopted.[14]

---

[13] See 1973 Neb. Laws, L.B. 226, § 6.

[14] See *Armour v. L.H.*, 259 Neb. 138, 608 N.W.2d 599 (2000).

Tylee argues that a county court's exclusive jurisdiction over adoption matters does not impinge upon a district court's general jurisdiction because adoption statutes do not have common-law origins. And she points to a case in which we affirmed a district court's dismissal of a man's petition seeking to establish his paternity under § 43-104.05 and obtain custody of his child. In *Armour v. L.H.*,[15] we concluded that a proceeding commenced under § 43-104.05 was an adoption matter, as distinguished from a paternity action commenced under chapter 43, article 13, of the Nebraska Revised Statutes. We reasoned that § 43-104.05 applies only when a biological mother is seeking to relinquish her child for adoption and an unmarried father is trying to establish his paternity under the putative father statutes. "Accordingly, the district courts lack subject matter jurisdiction over a petition to adjudicate paternity brought pursuant to § 43-104.05."[16] But *Armour* does not control here.

### (b) District Court Had Exclusive Jurisdiction Over Jesse's Claims for Habeas and Declaratory Relief

[10] Unlike the putative father in *Armour*, Jesse did not claim jurisdiction under § 43-104.05, and he was not a putative father seeking to establish his paternity. He claimed that he was already Jaelyn's legal father and sought her custody. And we have long held that habeas corpus is an appropriate proceeding to test the legality of custody and best interests of a minor, including the rights of fathers of children born out of wedlock.[17]

[11] The Nebraska Constitution provides for the remedy of habeas corpus.[18] We have held that habeas corpus is a civil

---

[15] See *id.*

[16] *Id.* at 145, 608 N.W.2d at 604.

[17] See, e.g., *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 385 N.W.2d 448 (1986) (citing 1948 case).

[18] See Neb. Const. art. I, § 8.

remedy *constitutionally available* in a proceeding to challenge and test the legality of a person's detention, imprisonment, or custodial deprivation of the person's liberty.[19] And a habeas corpus proceeding is appropriate to test the legality of custody and best interests of a minor, when the party having physical custody of the minor has not acquired custody under a court order or decree.[20]

[12,13] Because the privilege of the writ of habeas corpus is part of Nebraska's organic law, district courts have general jurisdiction over these proceedings. Many of our cases have implicitly recognized district courts' jurisdiction over a habeas proceeding challenging an adoption, despite the Legislature's 1973 grant of exclusive jurisdiction over adoption matters to county courts.[21] We have also held that district courts have inherent equity jurisdiction to resolve custody disputes.[22]

[14] The Legislature cannot limit or take away the broad and general jurisdiction of the district courts, as conferred by the Nebraska Constitution.[23] But it can give county courts concurrent original jurisdiction over the same subject matter.[24]

[15] We have exercised jurisdiction over an appeal from a county court's adoption decree, in which we decided a father's objection to the adoption on constitutional grounds.[25] That case

---

[19] See, *Flora v. Escudero*, 247 Neb. 260, 526 N.W.2d 643 (1995); *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992), citing Neb. Const. art. I, § 8.

[20] See *id.*

[21] See, e.g., *Monty S. & Teresa S. v. Jason W. & Rebecca W.*, 290 Neb. 1048, 863 N.W.2d 484 (2015); *Brett M. v. Vesely*, 276 Neb. 765, 757 N.W.2d 360 (2008); *Flora, supra* note 19; *Uhing, supra* note 19; *Shoecraft, supra* note 17.

[22] See *Charleen J. v. Blake O.*, 289 Neb. 454, 855 N.W.2d 587 (2014).

[23] See *Susan L. v. Steven L.*, 273 Neb. 24, 729 N.W.2d 35 (2007).

[24] See *id.*

[25] See *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 408 N.W.2d 272 (1987).

shows that a parent can challenge the legality of an adoption by objecting to the proceeding in county court.

[16] But despite the Legislature's grant of exclusive jurisdiction over adoption matters to county or juvenile courts, when a parent claims his or her child is being illegally detained for an adoption, a district court has original overlapping jurisdiction over the matter in a habeas proceeding. That is, a writ of habeas corpus is an equally available remedy for a claim of a child's illegal detention for adoption. And a habeas proceeding was appropriate here because Jesse knew only the name of Heather's attorney and did not know where the prospective adoptive parent(s) would commence an adoption proceeding. Equally important, when he commenced his action in district court, objecting to an adoption proceeding was not an available remedy.

[17-19] Our common-law jurisprudence recognizes the "'fundamental' proposition that 'where courts have concurrent jurisdiction, the first to assume jurisdiction retains it to the exclusion of the other.'"[26] More than 100 years ago, we held that when a district court acquires jurisdiction over a habeas proceeding involving the permanent custody of a child, no other court can acquire jurisdiction over the matter until after the first court's order is carried out.[27] Relying on that case, we have said that "[w]here an action is pending in two courts, the court first acquiring jurisdiction will hold jurisdiction to the exclusion of the other."[28] These holdings express the doctrine of jurisdictional priority.[29] And under these holdings, the district court erred in failing to recognize that as the first court to exercise jurisdiction over Jesse's claims in the habeas

---

[26] *Susan L., supra* note 23, 273 Neb. at 34, 729 N.W.2d at 43, citing *McFarland v. State*, 172 Neb. 251, 109 N.W.2d 397 (1961).

[27] *Terry v. State*, 77 Neb. 612, 110 N.W. 733 (1906).

[28] *Olsen v. Olsen*, 254 Neb. 293, 298, 575 N.W.2d 874, 878 (1998).

[29] See, *Charleen J., supra* note 22; *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013).

proceeding, it was required to retain jurisdiction to the exclusion of the county court.

[20] And because the district court had jurisdiction over Jesse's habeas proceeding, it also had jurisdiction over his related declaratory judgment action challenging Nebraska's adoption statutes.[30] The district court incorrectly avoided Jesse's challenges by determining that he lost standing. Contrary to the court's reasoning, Jesse did not lose standing because genetic testing later showed that he was not Jaelyn's biological father. A court determines standing as it existed when a plaintiff commenced an action.[31]

Neither was the action moot. Jesse's central claim was that his status as Jaelyn's legal father and his established familial relationship was sufficient to show that his consent to her adoption was constitutionally and statutorily required. He did not ask the district court to determine that he was Jaelyn's biological father. And by reasoning that Jesse lacked standing because the evidence showed he was not the biological father, the court effectively relied on the same statutes that Jesse was challenging as being unconstitutional.

In short, the district court erred in its apparent agreement with Tylee that it should delay a decision in this case until after the county court issued a decision. Instead, it should have determined that the county court could not exercise jurisdiction over the adoption petition until it determined whether Jaelyn was being lawfully detained for an adoption. Similarly, the court erred in dismissing Jesse's action for lack of standing. As Jaelyn's legal father, Jesse had a real interest in the subject matter of the controversy.[32] And his claims

---

[30] See Neb. Rev. Stat. §§ 25-21,149 (Reissue 2008) and 25-21,150 (Cum. Supp. 2014).

[31] *In re 2007 Appropriations of Niobrara River Waters*, 278 Neb. 137, 768 N.W.2d 420 (2009).

[32] See *In re Interest of Jackson E., supra* note 10.

presented a live controversy even if he was not Jaelyn's biological father.[33]

Finally, Tylee's reason for delaying the habeas proceeding—to wait for the county court's findings on Jesse's biological connection to Jaelyn—were irrelevant to Jesse's claim that § 43-1406 requires Nebraska to give full faith and credit to Ohio's paternity determination. Like the county court in the companion case, the district court failed to analyze Jesse's full faith and credit claim. But because we conclude that this claim is dispositive, we do not address Jesse's constitutional challenges to Nebraska's adoption statutes.

### 2. § 43-1406 Mandates Giving Full Faith and Credit to Another State's Paternity Determination

As we explained in *In re Adoption of Jaelyn B*.,[34] recognizing Jesse's parental rights under Ohio's paternity determination is not contrary to Nebraska's public policy. Section 43-1406 specifically requires Nebraska courts to give full faith and credit to a "determination of paternity made by any other state, whether established through voluntary acknowledgment, genetic testing, or administrative or judicial processes."

[21] We reject Tylee's argument that under Nebraska's statutes, Jesse's acknowledgment can only create a rebuttable presumption of paternity. As we explained in *Cesar C. v. Alicia L.*,[35] a paternity acknowledgment in Nebraska operates as a legal finding of paternity after the 60-day rescission period has expired.[36] At that point, the acknowledged father is the child's legal father—not a presumed father. And he

---

[33] See *Nebuda v. Dodge Cty. Sch. Dist. 0062*, 290 Neb. 740, 861 N.W.2d 742 (2015).

[34] *In re Adoption of Jaelyn B., supra* note 1.

[35] See *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011).

[36] See Neb. Rev. Stat. §§ 43-1402 and 43-1409 (Reissue 2008).

has the same right to seek custody as the child's biological mother, even if genetic testing shows he is not the biological father.[37]

[22] It is not contrary to Nebraska's public policy to recognize an acknowledged father's parental rights under another state's statutes when we have recognized an acknowledged father's parental rights under Nebraska's statutes. Moreover, we have previously recognized a man's legal status as a child's father that rested on a statutory paternity determination instead of a court's judgment.[38]

[23,24] The Full Faith and Credit Clause requires states to give the same effect to a judgment in the forum state that it has in the state where the court rendered the judgment.[39] Section 43-1406(1) extends the constitutional requirement of giving full faith and credit to a sister state's paternity determination through a voluntary acknowledgment. So whether a paternity acknowledgment made in a sister state requires a legal father's consent to an adoption depends upon whether the laws of the sister state confer that right.[40]

And as we explained in *In re Adoption of Jaelyn B.*,[41] Ohio's statutes confer that right. Because Tylee does not dispute Jesse's claim that his consent is required under Ohio law, we do not repeat that full analysis here. In sum, under Ohio's statutes, Jesse's acknowledgment created a "parent and child relationship between a child and the natural father."[42] Jaelyn is his child "as though born to him in lawful wedlock."[43]

---

[37] See *Cesar C., supra* note 35.

[38] See *Riddle v. Peters Trust Co.*, 147 Neb. 578, 24 N.W.2d 434 (1946).

[39] *In re Trust Created by Nixon*, 277 Neb. 546, 763 N.W.2d 404 (2009).

[40] See *Matter of Gendron*, 157 N.H. 314, 950 A.2d 151 (2008). See, also, *In re Mary G.*, 151 Cal. App. 4th 184, 59 Cal. Rptr. 3d 703 (2007); *Burden v. Burden*, 179 Md. App. 348, 945 A.2d 656 (2008).

[41] *In re Adoption of Jaelyn B., supra* note 1.

[42] Ohio Rev. Code Ann. § 3111.02(A) (LexisNexis 2008).

[43] Ohio Rev. Code Ann. § 3111.26 (LexisNexis 2008).

And the county court could not permit her adoption without his consent.[44]

### 3. § 43-1406 Precludes Disestablishing a Legal Father's Paternity Through an Adoption

[25] Adoption terminates the parent-child relationship.[45] We recognize that Nebraska's statutes ostensibly permit an adoption if genetic testing shows that a man is not a child's biological father. For example, § 43-104.05 sets out the requirements for a putative father's petition to establish paternity of his child born out of wedlock. Under this section, a putative father can file such a petition only if he previously filed an administrative objection to a child's adoption within 5 days of the child's birth or receiving notice of the mother's intent to relinquish custody. At that proceeding, § 43-104.05 authorizes a court to order genetic testing to determine whether the putative father's consent to an adoption is required under § 43-104.22(11). Similarly, § 43-104(4) provides that "[c]onsent shall not be required of an adjudicated or putative father who is not required to consent to the adoption pursuant to section 43-104.22."

[26] We have stated that "to terminate a father's rights through an adoption procedure, the consent of the adjudicated father of a child born out of wedlock is required for the adoption to proceed unless the Nebraska court having jurisdiction over the custody of the child determines otherwise, pursuant to § 43-104.22."[46] That section sets out 11 circumstances under which consent to an adoption is not required from an unmarried adjudicated or putative biological father. Tylee claims

---

[44] Ohio Rev. Code Ann. §§ 3107.06 and 3107.07 (LexisNexis Supp. 2009).

[45] See, Neb. Rev. Stat. §§ 43-410 (Cum. Supp. 2014) and 43-411 (Reissue 2008); *In re Adoption of Luke*, 263 Neb. 365, 640 N.W.2d 374 (2002).

[46] *Jeremiah J. v. Dakota D.*, 287 Neb. 617, 623, 843 N.W.2d 820, 826 (2014).

that Jesse's consent is not required under § 43-104.22(11). Under § 43-104.22(11), consent is not required if "[t]he man is not, in fact, the biological father of the child."

[27] We conclude that Jesse is not a "man" within the meaning of subsection (11). By its terms, § 43-104.22 applies only to determine the "parental rights of an adjudicated biological father or putative biological father of a minor child born out of wedlock." But Jesse is neither an adjudicated father nor a putative father. He is an acknowledged father. More important, to hold that subsection (11) applies to Jesse would directly conflict with the requirement under § 43-1406(1) that Nebraska give full faith and credit to another state's paternity determination. As we have explained, to do that we must look to the effect of that determination under Ohio law. And Ohio law gives an acknowledged father the full rights of a biological father whose child was born to him in lawful wedlock, and he has the right to withhold consent to an adoption. Under § 43-1406(1), Ohio's statutory determination of Jesse's paternity has the effect of a judgment.

[28,29] For judgments, collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter.[47] Only a void judgment is subject to collateral attack.[48] We conclude the same rules apply to a voluntary paternity acknowledgment that has the same effect as a judgment. Tylee has not attacked Jesse's paternity determination for procedural or jurisdictional defects, nor do we see any grounds for such a challenge. So the district court erred in failing to determine that Nebraska's adoption statutes could not authorize a county court to disestablish Jesse's paternity through an adoption without his consent. That is why we reversed the judgment and remanded the cause in the consolidated appeals from the adoption proceedings with

[47] *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012).

[48] *Id.*

directions for the county court to vacate its adoption decree. For the same reason, we reverse the district court's dismissal. We turn to the issues that the district court must resolve on remand in this case.

### 4. Jaelyn's Custody Going Forward

The primary issues going forward are whether Heather has any right to claim custody of Jaelyn and, if so, how to resolve a custody dispute between Heather and Jesse. Until the district court after remand orders otherwise, Tylee's status is only that of temporary custodian.

[30,31] The record in the companion case, *In re Adoption of Jaelyn B.*,[49] shows that Heather relinquished Jaelyn for adoption by Tylee. In a private adoption, the child is relinquished directly into the hands of the prospective adoptive parent or parents without interference by the state or a private agency.[50] We have held that a valid relinquishment of parental rights is irrevocable and that a natural parent who relinquishes his or her rights to a child by a valid written instrument gives up all rights to the child at the time of the relinquishment.[51] But the invalidity of Heather's specified adoption raises the issue whether her relinquishment was voidable. That is, was Tylee's adoption of Jaelyn a condition precedent for Heather's relinquishment?[52]

[32] The invalidity of the adoption also calls into question the validity of Heather's relinquishment. A natural parent's knowing, intelligent, and voluntary relinquishment of a child for adoption is valid. We will generally uphold relinquishments absent evidence of threats, coercion, fraud,

---

[49] *In re Adoption of Jaelyn B., supra* note 1.

[50] See *Monty S. & Teresa S., supra* note 21.

[51] See *id.* See, also, § 43-104(2)(a); *In re Adoption of Corbin J.*, 278 Neb. 1057, 775 N.W.2d 404 (2009).

[52] See, *Matter of Pima Cty. Juv. Action S-2698*, 167 Ariz. 303, 806 P.2d 892 (Ariz. App. 1990); *In re Christopher F*, 260 A.D.2d 97, 701 N.Y.S.2d 171 (1999).

or duress.[53] But in the typical case, a biological mother, alone or together with a biological father, had a change of heart and was seeking the return of a child whom she had validly relinquished for an adoption. This case is distinguishable because Heather appears to have relinquished her child only for adoption by Tylee. That specified adoption is invalid and cannot be completed without Jesse's consent unless an exception applies under Ohio law. The question regarding validity is whether Heather relinquished Jaelyn with the understanding that the planned adoption involved the risk that Jesse might be able to block it and obtain custody.

[33] These questions appear to be issues of first impression in Nebraska. So we do not decide them without giving the parties an opportunity to litigate. But we clarify that the first issue that the district court must resolve on remand is whether Heather's relinquishment was invalid or is void. If it finds that her relinquishment was invalid because it was not knowing and intelligent, or that it is void because a condition precedent was not satisfied, then Heather's parental rights are still intact. Under § 43-111, "[i]t is the adoption itself which terminates the parental rights, and until the adoption is granted the parental rights are not terminated."[54] When a parent's relinquishment of his or her child is invalid or void, § 43-111 governs when the parent's rights are terminated.

[34] Second, we clarify that a parent's fundamental rights apply in a habeas corpus proceeding to regain custody of his or her child who is the subject of an adoption proceeding if the parent's relinquishment is invalid or void. We have recently restated a rule from a 1991 habeas appeal involving an adoption: "Where the relinquishment of rights by a natural parent is found to be invalid for any reason, a best interests hearing is nevertheless held: 'The court shall not simply return the child

---

[53] See *Monty S. & Teresa S., supra* note 21.

[54] *In re Guardianship of Sain*, 211 Neb. 508, 516, 319 N.W.2d 100, 105-06 (1982).

to the natural parent upon a finding that the relinquishment was not a valid instrument.'"[55]

This statement comes directly from our decision in *Yopp v. Batt*.[56] In *Yopp*, we affirmed the trial court's finding that the natural mother's relinquishment in a private and closed adoption was valid. "Closed" meant that the identity of the prospective adoptive parents was unknown to the mother. Because the trial court concluded that the relinquishment was valid, it refused to conduct a best interests hearing. The mother assigned error to that ruling also.

We concluded that the Legislature had not treated relinquishments for a private adoption the same as relinquishments for an agency adoption. We explained that under Neb. Rev. Stat. § 43-106.01 (Reissue 1988), a valid written relinquishment for an agency adoption cuts off the parent's parental rights and duties upon the agency's written acceptance of responsibility for the child. But there is not a corresponding statute governing relinquishments for private adoptions. So under § 43-111, the relinquishing parent's parental rights are not extinguished until the adoption decree is entered.

Because the Legislature has not clarified the parties' rights in a private adoption when a parent attempts to revoke a relinquishment, we set out rules to govern their rights. One of these rules requires a best interests hearing even if the parent's relinquishment was invalid:

> When a conflict over custody of the child arises, the court shall take custody of the child and conduct a hearing to determine whether the best interests of the child require the child to remain with the prospective adoptive family or be returned to the natural parent. . . . Physical custody of the child may remain with the prospective adoptive family during the pendency of the proceedings if the

---

[55] *Monty S. & Teresa S., supra* note 21, 290 Neb. at 1052, 863 N.W.2d at 489.

[56] *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991).

court finds the child's situation suitable. *Additionally, if the relinquishment of rights by the natural parent is found to be invalid for any reason, a best interests hearing shall also be held to determine custody of the child. The court shall not simply return the child to the natural parent upon a finding that the relinquishment was not a valid instrument.* By these rules, we have sought to keep the best interests of the child at the forefront of the inquiry.[57]

In *Yopp*, we did not cite any authorities for the italicized rules above. But these statements cannot be interpreted to mean that in a habeas proceeding, a best interests inquiry is sufficient, in itself, to deprive a parent of custody if his or her parental rights remain intact. We explicitly rejected that reasoning 2 years after we decided *Yopp*.

*Uhing v. Uhing*[58] did not involve an adoption but it did involve a child custody dispute in a habeas proceeding between a mother and maternal grandmother. The unmarried mother had left her child with the grandmother for a time but still provided financial support. After the mother obtained stable employment and housing, the grandmother refused to surrender the child and the mother sought habeas relief. The district court concluded that the child should remain with the grandmother until the mother had a longer track record. We reversed, because the trial court had abused its discretion in relying on its best interests findings, without making any determination regarding the mother's fitness for custody.

[35-37] We acknowledged we had previously stated that "the 'question present in every habeas corpus case is the best interests of the child.'"[59] But despite those statements, "we

---

[57] *Id.* at 791-92, 467 N.W.2d at 877-78 (emphasis supplied).

[58] *Uhing, supra* note 19.

[59] *Id.* at 373, 488 N.W.2d at 370, quoting *L.G.P. v. Nebraska Dept. of Soc. Servs.*, 239 Neb. 644, 477 N.W.2d 571 (1991).

cannot overlook or disregard that the 'best interests' standard is subject to the overriding recognition that 'the relationship between parent and child is constitutionally protected.'"[60] We explained that a parent's superior right to custody over a stranger to the parent-child relationship protects both the parent's and the child's fundamental interest in maintaining it.[61] The Due Process Clause precludes the State from breaking apart a family over a parent's objections absent a powerful countervailing interest[62]:

> "Accordingly, a court may not, in derogation of the superior right of a biological or adoptive parent, grant child custody to one who is not a biological or adoptive parent unless the biological or adoptive parent is unfit to have child custody or has legally lost the parental superior right in a child."[63]

This court has recognized the parental preference principle in many contexts involving child custody. And in *Uhing*, we noted that we had recognized this principle in a habeas proceeding very early in Nebraska's history:

> As far back as *Norval v. Zinsmaster*, 57 Neb. 158, 77 N.W. 373 (1898), a habeas corpus proceeding involving child custody, the court expressed what remains the law of Nebraska concerning preeminence of the parental right to custody of a minor. . . . Consequently, . . . [*I*]*n a parent's habeas corpus proceeding directed at child custody*, a court may not deprive a parent of a minor's custody

---

[60] *Id.*, quoting *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978), and citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), and *Shoecraft, supra* note 17.

[61] See *Uhing, supra* note 19, citing *Bellotti v. Baird*, 443 U.S. 622, 99 S. Ct. 3035, 61 L. Ed. 2d 797 (1979).

[62] *Id.*, citing *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981).

[63] *Id*. at 375, 488 N.W.2d at 372, quoting *Stuhr v. Stuhr*, 240 Neb. 239, 481 N.W.2d 212 (1992).

unless it is affirmatively shown that the parent seeking habeas corpus relief is unfit to perform the parental duties imposed by the parent-child relationship or has legally lost parental rights in the child.[64]

[38] *Uhing* emphatically holds that the parental preference doctrine applies in a habeas proceeding to obtain custody of a child. And under our decision in *Nielsen v. Nielsen*,[65] a court in a habeas proceeding may not deprive a parent of custody of his or her minor child unless a party *affirmatively shows* that the parent is unfit or has forfeited the right to perform his or her parental duties. This reasoning applies to a habeas proceeding challenging an adoption when a parent's parental rights remain intact because a court determines that a relinquishment is invalid or is void. So on remand, if the court determines that Heather's relinquishment was invalid or void, it may not permanently deprive Heather of custody based solely on a finding that Tylee's continued custody of Jaelyn is in the child's best interests. But as stated, Tylee's status is only as Jaelyn's temporary custodian until there is a temporary or final resolution of the custody issues.

In contrast, Jesse did not voluntarily avail himself of Nebraska's adoption laws, relinquish his parental rights, or consent to Jaelyn's adoption. So, Ohio law governs whether any exceptions apply to Ohio's statutory requirement that his consent is required.

Third, if the district court determines that Heather and Jesse both have a right under the parental preference principle to seek Jaelyn's custody, it must determine the appropriate forum to resolve a custody dispute between them: the district court or the Ohio Court of Common Pleas, where Jesse's custody proceeding is apparently still pending.[66]

---

[64] *Id.* at 376-77, 488 N.W.2d at 372 (emphasis supplied).

[65] *Nielsen v. Nielsen*, 207 Neb. 141, 296 N.W.2d 483 (1980).

[66] See *In re Adoption of Jaelyn B., supra* note 1.

## VI. CONCLUSION

We conclude that the district court erred in failing to conclude that it had exclusive jurisdiction over Jesse's constitutional challenges to Nebraska's adoption statutes under the jurisdictional priority doctrine. Similarly, the court erred in concluding that it lacked subject matter jurisdiction to grant habeas relief to Jesse after the district court found that he was not Jaelyn's biological father. Jesse's challenges to Nebraska's statutes were not limited to whether he was the biological father, and the county court's findings were irrelevant to Jesse's claim that Nebraska must give full faith and credit to Ohio's paternity determination.

We conclude that § 43-1406 requires Nebraska to give full faith and credit to Ohio's paternity determination. Under Ohio's statutes, Jesse is Jaelyn's legal father and must consent to her adoption unless an exception applies.

As we stated in the companion case, we are sympathetic to the heartache that undoing these errors will cause the parties after this much time. This situation is partially the result of Nebraska's statutes that encourage biological mothers to minimize the rights of legal fathers. And Tylee's own delay tactics have arguably lengthened the litigation. But we cannot ignore our duty to uphold Jesse's parental rights under Ohio law. Accordingly, we reverse, and remand for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.

Stacy, J., not participating.